*** FILED: MARION COUNTY, FL  DAVID R. ELLSPERMANN, CLERK 2/8/2013 16:09:21.***

IN THE CIRCUIT COURT OF THE FIFTH JUDICIAL CIRCUIT,
IN AND FOR MARION COUNTY, FLORIDA
CIVIL DIVISION

NELSON CALDERON, Individually;
ELSIE CALDERON, Individually;
Plaintiffs,

v.                                                        No. 13-93-CAB

MERCHANTS AND SOUTHERN
BANK; GMAC MORTGAGE, LLC;
BANK OF AMERICA, N.A.; et al.,

Defendant(s).

## GMAC MORTGAGE, LLC'S
## MOTION TO DISMISS COMPLAINT TO QUIET TITLE
## WITH PREJUDICE

    **COMES NOW** defendant GMAC Mortgage, LLC ("GMACM"), pursuant to Florida

Rule of Civil Procedure 1.140(b)(6), and hereby moves to dismiss Plaintiffs Nelson Calderon

and Elsie Calderon ("Plaintiffs" or "Calderons")'s Verified Complaint to Quiet Title

("Complaint") with prejudice.[1]  In support of this Motion, GMACM states as follows.

### I.     INTRODUCTION

    Plaintiffs filed their Complaint on January 8, 2013.  (Docket, **Exhibit A**).  On that same

day, Plaintiffs also filed and recorded a Notice of *Lis Pendens* for the property.  (*Id.*).  In their

Complaint, Plaintiffs assert a single cause of action to quiet their alleged title to real property,

based on the sole allegation that they sent a letters to the original lender (who they admit is no

longer the mortgagee) and GMACM seeking information on the loan.  Plaintiffs claim that

---

[1] By moving to dismiss Plaintiffs' complaint in state court, GMACM does not waive the right to remove this case to federal court.  *See Bailey v. Janssen Pharmaceutica, Inc.*, 536 F.3d 1202, 1209 (11th Cir. 2008) (citing *Cogdell v. Wyeth*, 366 F.3d 1245, 1249 (11th Cir. 2004) (holding "that the removing defendant did not waive its right of removal by filing a motion to dismiss the plaintiff's complaint while the case was still pending in state court"); *Yusefzadeh v. Nelson, Mullins, Riley & Scarborough, LLP*, 365 F.3d 1244, 1246-47 (11th Cir. 2004) (filing a motion to dismiss in state court did not constitute substantial offensive or defensive action resulting in waiver of the right to remove).

1

1/2444220.3

because the original lender and GMACM allegedly failed to respond to their letters, the mortgage and any subsequent assignment are somehow rendered "null and void" and should be "cancel[ed]" of record. (*See generally*, Complaint). Even if GMACM and the original lender failed to so respond, such allegations do not, as a matter of law, support Plaintiffs' quiet title claim.

As a preliminary matter, the Calderons have no interest in the Property, are not entitled to quiet title, and do not have standing to bring this lawsuit. According to the warranty deed attached as an exhibit to Plaintiffs' Complaint, on February 20, 2012, the Calderons transferred the real property at issue in this action to Nelson Calderon, Jr., Tyaneka Byrams and Jessica Goyco as Trustees of the NTJ, INC Revocable Family Trust. (Exhibit A to Plaintiffs' Complaint). Accordingly, Plaintiffs have no interest in the property at all and are not entitled to relief on their sole quiet title claim, which should be dismissed for this reason alone.

Moreover, as Plaintiffs admit in their Complaint, on March 18, 2004, Nelson Calderon and Elsie Calderon executed a Mortgage on the subject property in exchange for a loan in the amount of $127,951.00. (*See* Complaint, ¶ 4; *see also* Mortgage, attached as Exhibit B to Plaintiffs' Complaint). The Mortgage was recorded in favor of Merchants and Southern Bank. Plaintiff admits that the Mortgage was subsequently assigned to GMACM. (*See generally*, Complaint). In fact, Plaintiffs attached the assignment to GMACM as an exhibit to their Complaint. (*See* Exhibit D to Plaintiffs' Complaint). The Mortgage, which was attached as Exhibit "B" to Plaintiffs' Complaint, was executed by the Calderons and references a Note, which was also executed by the Calderons. A copy of the Note is attached hereto as **Exhibit B**. The Note is dated March 18, 2004 and was in the amount of $127,951.00. By executing the Note, the Calderons specifically acknowledged that "in return for a loan *that I have received*, I

2

1/2444220.3

promise to pay U.S. $127,951.00." *See* Mortgage, Exhibit B to Plaintiffs' Complaint; Note, **Exhibit B** (emphasis added).

The Mortgage was recorded, along with the assignment in favor of GMACM. (*See* Assignment, Exhibit D to Plaintiffs' Complaint). Thus, to date, a valid, recorded, and unsatisfied mortgage exists on the property and Plaintiffs have not set forth any factual, legal, or equitable grounds upon which Plaintiffs can "cancel" their mortgage, rendering the mortgage and assignments "null and void." Simply put, Plaintiff's quiet title claim as to GMACM is frivolous and should be dismissed with prejudice.

In fact, a slew of similar "quiet title" actions that have been filed in Florida by borrowers or "land trusts," who take title to the property from the borrower with knowledge of an existing recorded and unsatisfied mortgage, have been rejected outright by the courts in Florida or ultimately dismissed with prejudice by the Plaintiffs.[2] Similarly, Florida Courts have rejected arguments that an unrecorded assignment of Mortgage (let alone a recorded assignment) somehow invalidates that underlying recorded Mortgage.[3] Moreover, in at least two such quiet title actions, the plaintiff has been sanctioned by the court for bringing a frivolous action.[4] As a matter of law, Plaintiffs cannot sustain their quiet title claim and this lawsuit and the *lis pendens* only serve to delay the enforcement of GMAC's rights under the Note and Mortgage.

---

[2] Notices of Voluntary Dismissal with and without prejudice, collectively **Exhibit C.**

[3] *See e.g. The Fidelity Land Trust Company v. Centex Home Equity Company, LLC,* Case No. 8:12-cv-2309-T-27TBM, 2012 WL 5383092, *1 (M.D. Fla. Nov. 1, 2012), Order attached hereto as **Exhibit D;** *see also JP Morgan Chase v. New Millennial, LC,* 6 So.3d 681 (2nd DCA 2009); Transcript of Dec. 12, 2011 Hearing before Circuit Court Judge Meenu Sasser, Fifteenth Judicial Circuit in and for Palm Beach County, Florida, Case No. 2012-CA-005543XXXXMB (**Exhibit E**).

[4] *The Fidelity Land Trust Company, LLC v. MERS, et al.,* Case No. 6:12-cv-01367-RBD-TBS, Doc. 17 (**Exhibit F**); *The Fidelity Land Trust Co., LLC v. MERS,* Case No. 8:12-cv-01930-EAK-MAP, Middle District of Florida, Endorsed Order, Doc. 14 (**Exhibit G**).

## II.   LEGAL STANDARD

A motion to dismiss should be granted when the Plaintiff fails to state a claim upon which relief may be granted. Fla. R. Civ. P. 1.140(b)(6). "The test for a motion to dismiss under rule 1.140(b)(6) is whether the pleader could prove any set of facts whatever in support of the claim." *Rocks v. McLaughlin Engineering Co.,* 49 So.3d 823, 826 (Fla. 4th DCA 2010) (citing *Hillman Const. Corp. v. Wainer,* 636 So.2d 576 (Fla. 4th DCA 1994)). When considering such a motion, the Court must view the facts in the light most favorable to the Plaintiff. *Palm Beach-Broward Medical Imaging Center, Inc. v. Continental Grain Co.,* 715 So. 2d 343, 344 (Fla. 4th DCA 1998). If it is clear that the plaintiff would not be entitled to relief under any set of facts that could be proved consistent with the allegations, the court should dismiss the complaint.

When ruling on a motion to dismiss, this Court is required to consider the exhibits attached to the Complaint and should consider documents incorporated by reference in the Complaint. *See e.g. Harry Pepper & Associates, Inc. v. Lasseter,* 247 So.2d 736, 736-37 (Fla. 3rd DCA 1971); *see also* Fla. R. Civ. P. 1.130(b) ("Any exhibit attached to a pleading shall be considered a part thereof for all purposes. Statements in a pleading may be adopted by reference in a different part of the same pleading, in another pleading, or in any motion); *Veal v. Voyager Property and Casualty Ins. Co.,* 51 So.3d 1246, 1249-50 (Fla. 2nd DCA 2011) (considering an extrinsic document for purposes of a motion to dismiss when the document was referred to in the complaint, Plaintiff's claims involved the document, and the document was, therefore, impliedly incorporated by reference in the complaint).

For this motion to dismiss, GMACM relies on the exhibits attached to Plaintiffs' Complaint, which include the mortgage and assignment. GMACM also relies on the note, which is incorporated by reference in Plaintiffs' Complaint, in the mortgage, and is central to Plaintiffs'

4

claims. *See e.g. Johns v. Gillian*, 184 So. 140, 143 (Fla. 1938) (holding that a mortgage passes as an "incident to the debt"). Because the foregoing extrinsic documents are either attached or incorporated by reference in Plaintiffs' Complaint and are central to Plaintiffs' claims, they are proper for consideration for this motion.

### III.   ARGUMENT

Despite having executed the Note and Mortgage in 2004, Plaintiffs ask this Court to adjudge the mortgage and assignment null and void, cancelling them "of record," and quieting Plaintiffs' title. (Complaint, p. 6). As the basis for the foregoing relief, Plaintiffs claim, nonsensically, that the original lender "failed to prove that it had lent any money to [plaintiffs]" and, thus, GMACM does not have a valid interest in the property. (Complaint, pp. 3-5). Plaintiffs' sole factual basis for this argument is the allegation that they sent letters to the original lender and GMACM requesting information on the loan to which Plaintiffs claim they received no response. (*Id.*).

Even assuming Plaintiffs' allegations are true, whether Plaintiffs received responses to their letters is wholly irrelevant to the validity of the recorded and unsatisfied mortgage and the validity of the assignment. In other words, a non-response does not invalidate the note, mortgage, or assignment. Moreover, whether Plaintiffs received a response is not an indicia of whether Plaintiffs actually received consideration for the Note, and such a position is contrary to their acknowledgement in the Note that consideration was received. Notably, Plaintiffs do not even allege that they did not receive consideration. Rather, Plaintiffs allege that the original lender failed to *prove* that consideration was provided. It is Plaintiffs' burden, however, to allege facts, which if true, would support their quiet title claim. Plaintiffs have not and cannot allege any such facts because they executed a note and mortgage in 2004, approximately nine years

5

ago, in which they acknowledged receipt of consideration from the original lender. Moreover, the mortgage is unsatisfied and Plaintiffs are in possession of the property. (Complaint, p. 2). Thus, Plaintiffs' claims should be dismissed with prejudice.

### A.    The Mortgage is Valid and Enforceable.

In order to maintain a claim for quiet title under Florida law, the party must establish: (1) the plaintiff's title in the property at issue, and (2) a cloud existing on that title. *See, e.g., Stark v. Frayer*, 67 So. 2d. 237, 239 (Fla. 1953); *Atl. Beach Imp. Corp. v. Hall*, 197 So. 464 (Fla. 1940); *Woodruff v. Taylor*, 118 So. 2d 822 (Fla. DCA 1960). In order to establish the existence of a cloud on title, a party must plead: (1) "the matter which constitutes the alleged cloud," and (2) "facts... which give the claim apparent validity as well as those which show its validity." *Stark*, 67 So. 2d at 239; *McDaniel v. McElvy*, 108 So. 820, 830 (Fla. 1926) (Holding that when an action is brought to "establish a title against an unknown cloud...then the facts which show the apparent existence of a potential cloud should be alleged.").

In this case, Plaintiffs executed the Mortgage and Note secured by the property. In fact, Plaintiffs attached a copy of the recorded mortgage as an exhibit to their Complaint, which Mortgage specifically references the Note. By executing the Mortgage and Note, Plaintiffs attested that "[i]n return for a loan *that I have received*, I promise to pay U.S. $127,951.00." (Note, **Exhibit B**, p. 1; *see also* Mortgage, Exhibit B to Plaintiffs' Complaint). Plaintiffs further do not contend that the Note and Mortgage have been satisfied (and cannot do so because they have not been); accordingly, no release or satisfaction of mortgage has been executed or recorded. Because the Mortgage is valid, recorded, and unsatisfied, Plaintiffs cannot maintain a quiet title action against GMACM.

1/2444220.3

**B.    Plaintiffs' Letters Do Not Afford Plaintiffs the Relief Sought.**

Plaintiffs only allegation that no consideration was received is based on the fact that they allegedly sent letters to the original lender, who failed to "prove" that money was lent. (Complaint, p. 3; Exhibits C and I to Plaintiffs' Complaint).  Plaintiffs also claim that they sent letters to GMACM asking GMACM to prove that it has a valid interest in the property.  Even if the alleged letters were sent by Plaintiffs and were received by the original lender or GMACM, who then allegedly failed to respond (which is disputed), the letters do not give Plaintiffs legal or equitable grounds to "cancel" the mortgage "of record."  Plaintiffs have asserted no legal or equitable authority to the contrary.[5]

In fact, in *Brickell v. Trammell*, 82 So. 221 (Fla. 1919), cited by Plaintiffs in their Complaint, the court noted that "[i]n suits to remove cloud upon title to real estate or for similar relief, the complainant must show with clearness, accuracy, and certainty the validity of her own title and the invalidity of the claim or act of the opposing party, and she must rest upon the strength of her own title, and not upon the lack of right in the opposing party." *Id*. Accordingly, even if GMACM did not respond to Plaintiffs' demand to "prove" that it has an interest in the Property, the letters have no bearing on Plaintiffs' affirmative quiet title claim.  GMACM's failure to respond, even if true, does not render the mortgage invalid.  That allegation does not prove that no consideration was paid in 2004, almost nine years ago.  Surely, if Plaintiffs had not received the loan proceeds, they would not have waited approximately nine years to file this action.  Thus, not surprisingly, Plaintiffs do not contend that they, in fact, did not receive consideration, nor could they, when they acknowledged receipt.  Because Plaintiffs have failed to

---

[5] In their Complaint, Plaintiffs cite to *Brickell v. Trammell*, 82 So. 221 (Fla. 1919), *Culbertson v. Montanbault*, 133 So. 2d 772, 774 (Fla. 2nd DCA 1961), and *McLemore v. McLemore*, 675 So. 2d 202, 206 (Fla. 1st DCA 1996). These cases are distinguishable from the instant case and do not support the asserted grounds for Plaintiffs' quiet title claim.

plead any facts or law to support their claim that the mortgage and subsequent assignment are invalid, Plaintiffs have failed to plead that a cloud on their alleged title exists and this lawsuit should be dismissed with prejudice.

### C.   The Assignment is Valid and Enforceable and, Regardless, Plaintiffs Lack Standing to Challenge It.

Likewise, Plaintiffs have failed to plead any allegations suggesting that the assignment of the mortgage is invalid or unenforceable.  Plaintiffs argue that because the original lender has failed to prove consideration was paid regarding the original note and mortgage, the subsequent assignment could not transfer any interest in the property.  (*See e.g.* Complaint, p. 3-5).  However, as stated above, Plaintiffs' consideration argument is illogical and Plaintiffs cannot sustain their quiet title claim on that ground.  Moreover, Plaintiffs do not dispute that they executed the Note and Mortgage, which was subsequently recorded.  The Mortgage expressly provided the Lender with the right to assign the Mortgage and transfer the Note without notice to Plaintiff.  (Mortgage, Exhibit B to Plaintiffs' Complaint, ¶ 20).  Accordingly, Merchants and Southern Bank transferred the note and assigned the Mortgage to GMACM.  In fact, Plaintiffs have attached a copy of the recorded assignment to GMACM to their Complaint.  (Exhibit D to Plaintiffs' Complaint).  Plaintiffs have not asserted, nor can they assert, any legal or equitable grounds that would provide relief in the form of "canceling" the assignment.

In any event, Plaintiffs do not even have standing to challenge the assignment.  In Florida, "[a] person not a party to nor in privity with a contract has no right to enforce it." *Gallagher v. Dupont*, 918 So.2d 342, 347 (Fla. 5th DCA 2006) (citing *White v. Exch. Corp.*, 167 So. 2d 324, 326 (Fla. 3rd DCA 1964)).  Courts have consistently held that borrowers lack standing to challenge an assignment of a mortgage. *See e.g. Ward v. Security Atlantic Mortg. Electronic Registration Systems, Inc.*, No. 5:10–CV–119–F, 2012 WL 871119, *5 (E.D.N.C.

March 14, 2012); *Livonia Prop. Holdings, L.L.C. v. 12840–12976 Farmington Rd. Holdings, L.L.C.*, 717 F. Supp. 2d 724, 735-7 (E.D. Mich. 2010) ("the validity of the assignments does not effect [sic] *whether* Borrower owes its obligations, but only *to whom* Borrower is obligated"); *Wolf v. Federal Nat. Mortg. Ass'n*, 830 F. Supp. 2d 153, 162 (W.D. Va. 2011) (holding plaintiff did not have standing to challenge the validity of an assignment from MERS to BAC because "she was not a party to the assignment, and the assignment did not affect her underlying obligation to make timely payments").

Accordingly, Plaintiffs lack standing to challenge the assignment of the mortgage, which, as stated above, is valid and enforceable. *See Rhodes v. JP Morgan Chase Bank, N.A.*, No. 12-80368, 2012 WL 5411062 at *4 (S.D. Fla. November 6, 2012) (holding that plaintiff has no standing to challenge assignment and thus, such cannot be a basis of plaintiff's quiet title action); *see also In re Canellas*, No. 6:11-cv-1247, 2012 WL 868772, at *3 (M. D. Fla. March 14, 2012) (holding that standing to challenge an assignment of mortgage requires status as a party to that agreement); *Roder v. RH Funding Co.*, No. 6:12-cv-1076, 2012 WL 6799690 (M.D. Fla. Dec. 10, 2012). Therefore, Plaintiffs are not entitled to quiet their alleged title and dismissal of this lawsuit with prejudice is appropriate.

### D.     The Calderons Lack Standing to Bring this Lawsuit

Finally, the Calderons lack standing to bring a quiet title claim because they no longer have an interest in the Property. By its nature, the purpose of a quiet title claim is to "straighten out the title," and determine the true and proper owner of certain real property. *See e.g. Johnston v. Cox*, 154 So. 206 (Fla. 1934). Even if issues with title to the property existed (which they do not as the mortgage and assignment are valid and enforceable), the Calderons admittedly have no interest in the Property. As an exhibit to their Complaint, the Calderons attached a warranty

deed dated February 20, 2012 that transferred the property at issue to Nelson Calderon, Jr., Tyaneka Byrams and Jessica Goyco *as Trustees* of the NTJ, INC Revocable Family Trust. (Warranty Deed, Exhibit A to Plaintiffs' Complaint). Thus, the Calderons no longer hold title and cannot have standing to "straighten out" a title to which they have no claim. Accordingly, Plaintiffs cannot sustain their sole quiet title claim and this lawsuit should be dismissed with prejudice.

## IV.   CONCLUSION

Plaintiffs have failed to state a cause of action and GMACM's motion to dismiss should be granted. A dismissal *with prejudice* is particularly appropriate in this case. There is no set of facts that would entitle Plaintiffs to quiet title to the property as and against GMACM. Thus, any amendment of the Complaint would be futile. *See Yun Enters. v. Graziani*, 840 So. 2d 420, 423 (Fla. 5th DCA 2003); *Gate Lands Co. v. Old Ponte Vedra Beach Condominium*, 715 So. 2d 1132 (Fla. 5th DCA 1998).

Moreover, a dismissal with prejudice is necessary because this claim is clearly without merit, is intended solely to delay, and has been frivolously brought. In fact, *Plaintiffs' counsel in this case has filed numerous identical complaints* against various servicers in Florida, including cases styled *Barrios v. Regions Bank et al.*, pending in the Fifth Judicial Circuit in and for Marion County, Case No. 12-4941-CAG; *Fitzgerald v. Regions Bank, et al.*, pending in the Fifth Judicial Circuit in and for Marion County, Case No. 12-3722-CAB; and *Fitzgerald v. Regions Bank, et al.*, pending in the Middle District of Florida, Case No. 5:13-cv-36-oc-10PRL; and *Jose R. Gonzalez v. Community Bank and Trust of Florida, et al.*, Case No. No. 12-5012-CAB, currently pending in the Fifth Judicial Circuit in and for Marion County, Florida (collectively attached as **Exhibit H**). This Court should not be inundated with such clearly

1/2444220.3

frivolous actions designed to abuse the court system.  As such, GMACM reserves the right to seek sanctions and any other relief provided by law and equity against Plaintiffs related to these meritless lawsuits.

WHEREFORE, GMAC Mortgage, LLC respectfully requests that this Court grant its motion to dismiss this lawsuit with prejudice and requests any such further relief as this Court deems appropriate.

Respectfully submitted this the 8th day of February, 2013.

/s/ Jessica L. Jones
Hope T. Cannon (Florida Bar No. 95542)
Jessica L. Jones (Florida Bar No. 96009)
Bradley Arant Boult Cummings LLP
1819 Fifth Avenue North
Birmingham, AL 35203
Telephone: (205) 521-8000
Facsimile:  (205) 521-8800
hcannon@babc.com
jjones@babc.com

ATTORNEYS FOR GMAC MORTGAGE, LLC

## CERTIFICATE OF SERVICE

I hereby certify that on February 8, 2013, I served the foregoing by U.S. mail, postage pre-paid, and by E-mail, addressed to the following:

Kelley A. Bosecker, Esq.
1400 Gandy Boulevard, #706
St. Petersburg, FL 33702
sbosecker@tampabay.rr.com

ATTORNEY FOR PLAINTIFF

/s/ Jessica L. Jones
One of the Attorneys for GMAC Mortgage, LLC

11

EXHIBIT A

Marion County Clerk of the Circuit Court                                         Page 1 of 2

| CASE SEARCH | CASE TYPE SEARCH | DOCKET SEARCH |
|---|---|---|

Website Home | Case Search Page | Case Search Help | Case Type Tables

back to search page

## CASE INFORMATION

**Case Number:** 42-2013-CA-000093-AXXX-XX
**File Date:** 01/08/2013
**Judge:** STEVEN G ROGERS

**Plaintiff :** CALDERON NELSON
*ATTORNEY: BOSECKER KELLEY ANDREA*

**Defendant :** MERCHANT AND SOUTHERN BANK

**Plaintiff :** CALERON ELSIE
*ATTORNEY: BOSECKER KELLEY ANDREA*

**Defendant :** GMAC MORTGAGE LLC
BANK OF AMERICA NA

### Dockets

| Date | Event | Count | Party | Amount |
|---|---|---|---|---|
| 02/01/2013 | SUMMONS RETURNED SERVED | | | $0.00 |
| | TO GMAC MORTGAGE LLC JANUARY 22, 2013 | | | |
| 02/01/2013 | SUMMONS RETURNED SERVED | | | $0.00 |
| | TO MERCHANTS AND SOUTHERN BANK JANUARY 23, 2013 | | | |
| 01/15/2013 | SUMMONS RETURNED SERVED | | | $0.00 |
| | BANK OF AMERICA NA | | | |
| | SERVED ANGIE LAWRENCE 1/15/13 | | | |
| 01/08/2013 | NOTICE OF LIS PENDENS | | CALDERON NELSON | $0.00 |
| 01/08/2013 | SUMMONS ISSUED | | | $0.00 |
| | MERCHANTS AND SOUTHERN BANK, GMAC MORTGAGE LLC, BANK OF AMERICA NA. | | | |
| 01/08/2013 | PETITION/COMPLAINT | | CALDERON NELSON | $0.00 |
| | QUIET TITLE. | | | |
| 01/08/2013 | CIVIL COVER SHEET | | CALDERON NELSON | $0.00 |
| 01/08/2013 | PETITION/COMPLAINT NO DOC# | | | $0.00 |
| 01/08/2013 | ASM: CLERK FEE TO ESCROW ACCT | | CALDERON NELSON | $10.00 |
| 01/08/2013 | ASM: ISSUE SUMMONS -CA | | CALDERON NELSON | $30.00 |
| 01/08/2013 | ASM:GENERAL CIRCUIT CIVIL CASE | | CALDERON NELSON | $400.00 |

### Payments

| Date | Receipt # | Event | Party | Amount |
|---|---|---|---|---|
| 01/08/2013 | V-103522 | PAY:GENERAL CIRCUIT CIVIL CASE | CALDERON NELSON | $400.00 |
| 01/08/2013 | V-103522 | | CALDERON NELSON | $30.00 |

Marion County Clerk of the Circuit Court

Page 2 of 2

| | | PAY: ISSUE SUMMONS -CA | | |
|---|---|---|---|---|
| 01/08/2013 | V-103522 | PAY: CLERK FEE TO ESCROW ACCT | CALDERON NELSON | $10.00 |

* bold records have been voided

www.MarionCountyClerk.org

# EXHIBIT B

60606761

MIN 1002198-0400000750-0
Loan ID # 40801712

# NOTE

March 18th, 2004 OCALA, FLORIDA
[Date] [City] [State]

SW 200TH CIRCLE, DUNNELLON, FLORIDA 34432
[Property Address]

**1. BORROWER'S PROMISE TO PAY**

In return for a loan that I have received, I promise to pay U.S. $127,951.00 (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is MERCHANTS AND SOUTHERN BANK . I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

**2. INTEREST**

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of *** %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

**3. PAYMENTS**

**(A) Time and Place of Payments**

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the 1st day of each month beginning on February 1st, 2005 , I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on October 1st, 2035 , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at 2040 NW 67TH PLACE, GAINESVILLE, FL 32653 or at a different place if required by the Note Holder.

**(B) Amount of Monthly Payments**

My monthly payment will be in the amount of U.S. $ *** . ***SEE ALLONGE

**4. BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

**5. LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

**6. BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A) Late Charge for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of Fifteen calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5.000 % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

Loan ID # 40801712

**7. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**8. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**9. WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**10. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial Interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**11. DOCUMENTARY TAX**

The state documentary tax due on this Note has been paid on the mortgage securing this indebtedness.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____(Seal)
NELSON CALDERON                 -Borrower

_____(Seal)
ELSIE Y CALDERON                -Borrower

_____(Seal)
                                -Borrower

SEE ATTACHED ATTACHE  _____(Seal)
                                -Borrower

_____(Seal)
                                -Borrower

_____(Seal)
                                -Borrower

*[Sign Original Only]*

FLORIDA FIXED RATE NOTE--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          Form 3210 1/01  *(page 2 of 2 pages)*
FL1CN2.CI - 11162000                                                                        www.MortgageBankingSystems.com

WITHOUT RECOURSE PAY TO THE ORDER OF GMAC BANK
BY MERCHANTS AND SOUTHERN BANK

TERESA D FAUL

SENIOR VICE PRESIDENT

Pay to the Order of
GMAC Mortgage Corporation
Without Recourse

Joanne Wight, Vice President
Acting Agent for GMAC Bank

PAY TO THE ORDER OF

WITHOUT RECOURSE
GMAC MORTGAGE CORPORATION

J. Vollmer
Limited Signing Officer

Loan ID # 40801712

# ALLONGE

THIS ALLONGE, made as of the 18th day of March, 2004 , by the undersigned (BORROWER), is to be attached to and made a part of that certain Note dated March 18, 2004 by the BORROWER to MERCHANTS AND SOUTHERN BANK
(the "Bank"), in the principal amount of One Hundred Twenty Seven Thousand Nine Hundred Fifty One- - - - - - - - - - - ($ 127,951.00 ) (the "Note"), which is secured as therein set forth.

NOW THEREFORE, the BORROWER acknowledges that the loan made by the Bank to the BORROWER is for the purposes of construction pursuant to a Residential Construction Loan Agreement or Loan Commitment between the BORROWER and the Bank, and the BORROWER agrees that from the date hereof to and including February 1st, 2005 the Borrower shall pay interest at the rate of ** % Percent only on amounts advanced by the Bank to the BORROWER, which interest shall be due from the date of each advance made by the Bank to the BORROWER, and which interest shall be payable monthly 30 days from which the first advance is made and on the same day of each month thereafter to an including the date last above set forth. Thereafter, the BORROWER shall make monthly installment payment of principal and interest.

Upon expiration of the construction term the BORROWER further agrees to deposit with the Bank on the first day of each month, in addition to making payments of principal and interest, until the Note is fully paid, an amount equal to one-twelfth (1/12) of the annual taxes and/or of the annual insurance premiums. The BORROWER shall deliver to the Bank such additional monies as are necessary to make up any deficiencies in the amounts necessary to enable Mortgagee to pay such taxes or premiums when due.

THE BORROWER further agrees that when all construction funds have been disbursed by the Bank, or BORROWER or tenants occupy the mortgaged property, or 9 months from closing, whichever first occurs, the BORROWER shall within ten (10) days of that occurrence, execute a modification of the Note to reflect (1) a new interest rate; (2) a new initial monthly payment date; (3) a new final maturity date; (4) a new monthly payment based upon the new interest rate; (5) if the loan is an adjustable rate loan, a new interest rate change date, and (6) a new maximum interest rate, if applicable. The new interest rate referred to herein shall be the market rate of interest then being charged by the Bank for the particular classification of loan to which the Allonge pertains. Failure to execute this modification shall cause all sums due under the note become immediately due and payable.

THE BORROWER agrees that a default by the BORROWER under the terms of said Construction Loan Agreement or Loan Commitment shall constitute a default under the Note and the Mortgage which is security for the Note.

IN WITNESS WHEREOF, the BORROWER has caused this Allonge to be executed as of the date first above set forth. **PRIME RATE PLUS .50%

_Nelson Calderon_
NELSON CALDERON                                                    -Borrower

_Elsie Calderon_
ELSIE I CALDERON                                                   -Borrower

_____
                                                                  -Borrower

_____
                                                                  -Borrower

_____
                                                                  -Borrower

_____
                                                                  -Borrower

XMASG1 - 03271998                                          Doc Prep Plus, Inc.

# EXHIBIT C

IN THE CIRCUIT COURT OF THE 17TH JUDICIAL CIRCUIT
IN AND FOR BROWARD COUNTY, FLORIDA

THE CAMBRIDGE LAND TRUST COMPANY, LLC          CASE NO.: 12-23016
as Trustee for Florida Land Trust
No. 30190 dated June 1, 2012,

  Plaintiff,

vs.

MORTGAGE ELECTRONIC REGISTRTION
SYSTEMS, INC., as Nominee for Hamilton Group
Funding Inc.

  Defendant.

_____

### NOTICE OF VOLUNTARY DISMISSAL

  COMES NOW Plaintiff in the above-styled cause and freely and voluntarily dismisses the

within action with prejudice as to all defendants pursuant to Fla.R.Civ.Proc. Rule 1.420(a)(1)(A), all

parties to bear their own fees and costs.

  Accordingly, the Notice of Lis Pendens recorded August 17, 2012 in Book 49008 at Page

292 in the Official Records of Broward County shall be and hereby is cancelled.

### Certificate of Service

The undersigned certifies that a true copy of the foregoing Notice of Voluntary Dismissal was
furnished via email on October 13, 2012 to Defendant:

c/o Bradley Arant Boult & Cummings, LLP
Attorneys for Defendant
Attn.: Hope T. Cannon via email – hcannon@babc.com
Attn.: Jessica L. Jones via email – jjones@babc.com
Attn.: Alecia Cockrell via email – acockrell@babc.com
One Federal Place
1819 Fifth Avenue North
Birmingham, AL 35203-2119

Liszt & Associates, PA
Joshua Liszt, Esq.
Fla. Bar 725811
1200 North Federal Highway #200
Boca Raton, Florida 33432
Phone 561-869-3703
Fax 866-292-0295

# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

| | |
|---|---|
| THE FIDELITY LAND TRUST COMPANY, LLC *as Trustee under Trust No. 000068 dated March 1, 2012,* )<br>)<br>)<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AND )<br>BEAZER MORTGAGE CORPORATION, )<br>Defendants. )<br>) | Case No. 8:12-cv-01930-EAK-MAP |

## PLAINTIFF'S NOTICE OF VOLUNTARY DISMISSAL
### PURSUANT TO FRCP 41(a)(1)(A)(i)

Plaintiff THE FIDELITY LAND TRUST COMPANY, LLC *as Trustee under Trust No. 000068 dated March 1, 2012* notifies this Honorable Court and Defendants MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AND BEAZER MORTGAGE CORPORATION, that pursuant to FRCP 41(a)(1)(A)(i), Plaintiff freely and voluntarily dismisses the above captioned action without prejudice.

Respectfully Submitted,

The Delta Law Firm
5030 Champion Boulevard
G11 PMB #275
Boca Raton, FL 33487
561-910-5988 Telephone
Attorney for Plaintiff

By: _____
Howard Feinmel, Esq.
Florida Bar #169293
Feinmel@hotmail.com

09-14-'12 03:08  FROM-Law Office          54-571-8753          T-601  P003/003 F-194

## CERTIFICATE OF SERVICE

I hereby certify that on September _14_ 2012, I electronically filed the foregoing with the

Clerk of the Court using the CM/ECF system which will send notification of such filing to the

following:

    Jose D. Vega, Esq.
    Bradley Arant Boult Cummings LLP
    1819 Fifth Avenue North
    Birmingham, AL 35203
    Attorney for Defendant Mortgage Electronic Registration Systems, Inc.

HOWARD FEINMEL

### UNITED STATES DISTRICT COURT
### FOR MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

THE FIDELITY LAND TRUST )
COMPANY, LLC *as Trustee under Trust* )
*No. 000068 dated February 3, 2012,* )
)
    Plaintiff, )
)     Case No. 6:12-cv-01367-RBD-TBS
v, )
)
MORTGAGE ELECTRONIC )
REGISTRATION SYSTEMS, INC. AND )
HOMECOMINGS FINANCIAL )
NETWORK, INC., )
    Defendants. )
)

### PLAINTIFF'S NOTICE OF VOLUNTARY DISMISSAL
### PURSUANT TO FRCP 41(a)(1)(A)(i)

Plaintiff THE FIDELITY LAND TRUST COMPANY, LLC *as Trustee under Trust No.*

*000068 dated February 3, 2012* notifies this Honorable Court and Defendants MORTGAGE

ELECTRONIC REGISTRATION SYSTEMS, INC. AND HOMECOMINGS FINANCIAL

NETWORK, INC., that pursuant to FRCP 41(a)(1)(A)(i), Plaintiff freely and voluntarily

dismisses the above captioned action without prejudice.

        Respectfully Submitted,

        The Delta Law Firm
        5030 Champion Boulevard
        G11 PMB #275
        Boca Raton, FL 33496
        561-910-5938 Telephone
        Attorney for Plaintiff

        By:   /s/
           Howard Feinmel, Esq.
           Florida Bar #169293
           Feinmel@hotmail.com

### CERTIFICATE OF SERVICE

I hereby certify that on September _18_ 2012, I filed the foregoing with the Clerk of the

Court.  The CM/ECF system which will send notification of such filing to the following:

    Jose D. Vega, Esq.
    Bradley Arant Boult Cummings LLP
    1819 Fifth Avenue North
    Birmingham, AL 35203
    Attorney for Defendant Mortgage Electronic Registration Systems, Inc.

Attorney for Plaintiff also forwarded a true copy to the above via First Class Mail on September
_18_ , 2012.

/s/

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

| | |
|---|---|
| THE FIDELITY LAND TRUST COMPANY, LLC *as Trustee under Trust No. 000013 dated December 29, 2011,* )<br>)<br>)<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AND HOMECOMINGS FINANCIAL NETWORK, INC., )<br>)<br>)<br>)<br>)<br>Defendants. )<br>) | Case No. 0:12-cv-61846-DMM |

## PLAINTIFF'S NOTICE OF VOLUNTARY DISMISSAL
### PURSUANT TO FRCP 41(a)(1)(A)(i)

Plaintiff THE FIDELITY LAND TRUST COMPANY, LLC *as Trustee under Trust No. 000013 dated December 29, 2011* notifies this Honorable Court and Defendants MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AND HOMECOMINGS FINANCIAL NETWORK, INC., that pursuant to FRCP 41(a)(1)(A)(i), Plaintiff freely and voluntarily dismisses the above captioned action without prejudice.

Respectfully Submitted,

The Delta Law Firm
5030 Champion Boulevard
G11 PMB #275
Boca Raton, FL 33487
561-910-5938 Telephone
Attorney for Plaintiff

By:    /s/
Howard Feinmel, Esq.
Florida Bar #169293
Feinmel@hotmail.com

**CERTIFICATE OF SERVICE**

I hereby certify that on September 27, 2012, I filed the foregoing with the Clerk of the Court. The CM/ECF system which will send notification of such filing to the following:

Hope T. Cannon
Bradley Arant Boult Cummings LLP
1819 Fifth Avenue North
Birmingham, AL 35203
Attorney for Defendant Mortgage Electronic Registration Systems, Inc.

Attorney for Plaintiff also forwarded a true copy to the above via First Class Mail on September 27, 2012.

/s/ _____

## IN THE CIRCUIT COURT FOR LEON COUNTY, FLORIDA
### CIVIL DIVISION

### CASE NO: 2012-CA-939

THE FIDELITY LAND TRUST COMPANY, LLC AS TRUSTEE UNDER
TRUST NO. 000001 DATED DECEMBER 9, 2011,

     Plaintiff,

-v-

US BANK NATIONAL ASSOCIATION AS TRUSTEE FOR RASC 2007-KS3,

     Defendants.

### NOTICE OF VOLUNTARY DISMISSAL

YOU ARE NOTIFIED that plaintiff dismisses this action with prejudice
pursuant to Rule 1.420(a)(1).

I certify that a copy of the foregoing has been furnished by U.S. mail to:
Brian A. Wahl, Esq. of Bradley Arant Boult Cummings, LLP, 1819 Fifth Avenue
North, Birmingham, AL 35203 this 26th day of September, 2012 and via
electronic mail to: bwahl@babc.com this 26th day of September, 2012.

Dated:  9/26/12

THE DELTA LAW FIRM

HOWARD NEINMEL, ESQUIRE
FBN: 169293
5030 Champion Blvd.
G11 PMB #275
Boca Raton, FL 33496
Telephone 561-910-8139
Rebekah@thedeltalawfirm.com

IN THE CIRCUIT COURT OF THE 17TH JUDICIAL CIRCUIT
IN AND FOR BROWARD COUNTY, FLORIDA

THE CAMBRIDGE LAND TRUST COMPANY, LLC          CASE NO.: 12-23016
*as Trustee for Florida Land Trust*
*No. 30190 dated June 1, 2012,*

     Plaintiff,

vs.

MORTGAGE ELECTRONIC REGISTRTION
SYSTEMS, INC., as Nominee for Hamilton Group
Funding Inc.

     Defendant.

_____

## NOTICE OF VOLUNTARY DISMISSAL

COMES NOW Plaintiff in the above-styled cause and freely and voluntarily dismisses the within action with prejudice as to all defendants pursuant to Fla.R.Civ.Proc. Rule 1.420(a)(1)(A), all parties to bear their own fees and costs.

Accordingly, the Notice of Lis Pendens recorded August 17, 2012 in Book 49008 at Page 292 in the Official Records of Broward County shall be and hereby is cancelled.

### Certificate of Service

The undersigned certifies that a true copy of the foregoing Notice of Voluntary Dismissal was furnished via email on October 13, 2012 to Defendant:

c/o Bradley Arant Boult & Cummings, LLP
Attorneys for Defendant
Attn.: Hope T. Cannon via email -- hcannon@babc.com
Attn.: Jessica L. Jones via email -- jjones@babc.com
Attn.: Alecia Cockrell via email -- acockrell@babc.com
One Federal Place
1819 Fifth Avenue North
Birmingham, AL 35203-2119

Liszt & Associates, PA
Joshua Liszt, Esq.
Fla. Bar 725811
1200 North Federal Highway #200
Boca Raton, Florida 33432
Phone 561-869-3703
Fax 866-292-0295

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

THE FIDELITY LAND TRUST COMPANY,
LLC *as Trustee for Florida Land Trust*
*No. 10340 dated December 29, 2011,*

       Plaintiff,

vs.                           Case No.: 9:12-cv-81073-WJZ

HOMECOMINGS FINANCIAL, LLC,

       Defendant.

_____/

### NOTICE OF DISMISSAL AND RELEASE OF LIS PENDENS

Plaintiff in the above-styled cause and freely and voluntarily dismisses the within action without prejudice pursuant to FRCP Rule 41(a)(1)(A)(i), all parties to bear their own fees and costs. ("MERS" was dropped as a party defendant prior to the removal of this action to federal court.)

Accordingly, the Notice of Lis Pendens recorded March 5, 2012 in Book 25051 at Page 294 in the Official Records of Palm Beach County, Florida shall be and the same hereby is withdrawn and released.

### Certificate of Service

The undersigned certifies that on the date listed below the foregoing Notice was filed with the Clerk of the Court via CM/ECF, which will send a notice of electronic filing to counsel of record for Defendant Homecomings Financial, LLC.

Dated January 16, 2013                     Respectfully submitted,

                                   The Fidelity Land Trust Company, LLC
                                   2234 North Federal Highway #419
                                   Boca Raton, FL 33431
                                   954-278-3280

                             By: _____*/s/*_____
                                   Peter J. Bowers, Esq. FBN 98991
                                   Peter J Bowers PA

# EXHIBIT D

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

THE FIDELITY LAND TRUST COMPANY,
LLC as Trustee for Florida Land trust
No. 00160 dated January 20, 2012,

       Plaintiff,

vs.                              Case No. 8:12-CV-2309-T-27TBM

CENTEX HOME EQUITY COMPANY, LLC,
N/K/A/ NATIONSTAR MORTGAGE LLC,

       Defendant,

_____/

### ORDER

**BEFORE THE COURT** is NATIONSTAR's Motion to Dismiss (Dkt. 4), to which Plaintiff

has not responded as required by the Local Rules. Accordingly, the motion is deemed unopposed and

is therefore GRANTED.

Plaintiff's four count Verified First Amended Complaint seeks declaratory relief discharging

an unrecorded "assignment of mortgage or other evidence of transfer of ownership of the Subject

Mortgage," pursuant to Florida Statute § 695.01 (Count I); discharging an unrecorded assignment

of mortgage pursuant to Florida Statute § 701.02 (Count II), discharging unidentified unrecorded

interests in certain real property pursuant to Florida Statute § 48.23, and quieting title *vis a vis* the

Subject Mortgage, pursuant to Florida Statute § 65.021 (Dkt. 3).

In Count I, Plaintiff includes a demand that then underlying recorded mortgage ("Subject

Mortgage") be "extinguished and cancelled of record." Plaintiff admits, however, that it took title

to the subject real property six years after Defendant's mortgage was recorded (Dkt. 3, ¶¶ 3, 6).

Plaintiff does not allege that the mortgage has been satisfied. Rather, Plaintiff's convoluted theory is that the mortgage has been assigned to an unknown holder who has not recorded the assignment and therefore the underlying mortgage should be cancelled of record. This theory is frivolous. The failure to record a mortgage assignment does not invalidate Defendant's recorded mortgage.

As for Count II, the failure to record an assignment of mortgage provides no basis to discharge the assignment under Fla. Stat. § 701.02. Simply put, that statute does not apply to purchasers who take title to real property subject to a recorded mortgage. *In re Halabi*, 184 F.3d 1335, 1338 (11th Cir. 1999). As for Count III, Fla. Stat. § 48.23 does not bar enforcement of a recorded mortgage filed prior to the filing of a *lis pendens*. As for Count IV, no lawful basis has been pleaded which supports a quiet title action as to a mortgage recorded prior to Plaintiff obtaining title.

The essence of the Verified First Amended Complaint is a frivolous attempt to avoid enforcement of a recorded mortgage on property acquired by Plaintiff after the mortgage was recorded. The allegations of Plaintiff's Verified First Amended Complaint do not and cannot state claims upon which relief may be granted.[1] This action is therefore subject to dismissal with

---

[1] Indeed, the Florida Attorney General recently obtained temporary injunctive relief against this Plaintiff barring it from the following deceptive and unfair trade practices:

> a. engaging in, rendering, or otherwise providing services to Florida homeowners directly or indirectly by which [Fidelity Land Trust, et al.] claim to cancel or otherwise void previously recorded mortgages so that the mortgages are not enforceable against [Fidelity Land Trust, et al.] or any other party *because the mortgage assignments were not recorded;*

> b. soliciting, advertising, representing or otherwise offering directly or indirectly to Florida homeowners services by which [Fidelity Land Trust, et al.] claim to cancel or otherwise void previously recorded mortgages so that the mortgages are not enforceable against [Fidelity Land Trust, et al.] or any other party *because the mortgage assignments were not recorded . . . .*

(Dkt. 4-2).

2

prejudice.

Accordingly, Nationstar's Motion to Dismiss is GRANTED. This cause is DISMISSED

WITH PREJUDICE. The clerk is directed to CLOSE the file.

**DONE AND ORDERED** this 31st day of October, 2012.

JAMES D. WHITTEMORE
United States District Judge

Copies to: Counsel of Record

3

# EXHIBIT E

Page 1

1   IN THE CIRCUIT COURT OF THE FIFTEENTH JUDICIAL CIRCUIT

2           IN AND FOR PALM BEACH COUNTY, FLORIDA

3           CASE NO.:  2012-CA-005543XXXXMB

4

5

6   THE FIDELITY LAND TRUST AS TRUSTEE UNDER

    LAND TRUST No.: 000004, DATED DECEMBER 12, 2011,

7   a Florida Land Trust,

8                   Plaintiff,

9   vs.

10  MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.,

    and AMERICA'S WHOLESALE LENDER,

11

12              Defendants.            **ORIGINAL**

13  _____/

14

15

16

17              Palm Beach County Courthouse

                205 North Dixie Highway

18              West Palm Beach, Florida

                Wednesday, 9:27-9:35 a.m.

19              January 9, 2013

20

21

22

23      This cause came on for hearing before the

24  Honorable Meenu T. Sasser, Circuit Court Judge, in open

25  court, pursuant to notice.

Page 2

```
 1   APPEARANCES:
 2   ATTORNEYS FOR PLAINTIFF:
 3       MICHAEL J. LISS, ESQUIRE
         THE LAW OFFICES OF MIKE LISS
 4       2385 NW Executive Center Drive
         Suite 100
 5       Boca Raton, Florida   33431
         (561) 981-6210
 6
     ATTORNEYS FOR DEFENDANTS:
 7
 8       ALBERT D. GIBSON, ESQUIRE
         BLANK ROME, LLP
         1200 North Federal Highway
 9       Suite 312
         Boca Raton, Florida   33432
10       (561) 417-8100
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

1          (Thereupon, the following proceedings were had

2     in open court:)

3          THE COURT:  Good morning, Counsel, please

4     state your appearances for the record.

5          MR. GIBSON:  Yes, Your Honor, Albert Gibson on

6     behalf of Mortgage Electronic Registration Systems

7     and America's Wholesale Lender.

8          MR. LISS:  And my name is Mike Liss, Judge.

9     Happy New Year.  I'm here on behalf of Fidelity

10    Land Trust and also Howard Feinmel, who is counsel

11    of record.

12         THE COURT:  Is he going to be appearing here

13    today?

14         MR. LISS:  No, I'm here for both of them, he

15    potentially being sanctioned as well as his client,

16    and so he felt it advisable to get outside counsel

17    to handle the hearing for him.

18         THE COURT:  All right.  That's fine.  Let's go

19    ahead and proceed.  We're here on a motion that was

20    specially set this morning that counsel had filed

21    regarding the motion for sanctions.

22         Are you ready to proceed?

23         MR. GIBSON:  Yes.  May I approach, Your Honor?

24         THE COURT:  Of course.  I had a chance to read

25    the entire court file along with your motion and

Page 4

1    everything, all of the case law that you cited in

2    there.  You may proceed.

3        MR. GIBSON:  Thank you, Your Honor.

4    Basically, we're not here for blood today, Your

5    Honor, and I'll give you a little bit of background

6    on these cases.  Mr. Feinmel, as well as a couple

7    of other attorneys, have been filing quiet title

8    actions.

9        What they do is they form a land trust, and a

10   borrower, whose property is encumbered, most often

11   under water, decides that they're going to retain

12   their services and deed this property to the land

13   trust, and then the land trust files a quiet title

14   action.

15       Now I'm personally involved in about fifty of

16   these right now, and every court that we have been

17   to has dismissed these claims, and so it has been

18   our practice that as soon as we file our motion to

19   dismiss, we're also filing a motion for sanctions,

20   and we're giving them their 21 days, and this was

21   eventually dismissed, but it was not dismissed

22   within the 21-day period.

23       Now I believe that there is case law in Gore

24   that says that if they miss the 21-day safe harbor

25   period, and you're considered the prevailing party,

Page 5

1    then it's actually a shall rather than the Court

2    shall award, and as I said, all we're asking for is

3    our reasonable attorneys' fees, but we are

4    expending a ridiculous amount of money on these

5    cases trying to get these dismissed throughout the

6    State, and then furthermore, the deed is still

7    actually in the land trust's name, and that's not

8    for today, but this is going to take even more

9    litigation to get all of this worked out.

10        The state attorney has obviously taken notice

11   of these cases.  They filed an action to enjoin Mr.

12   Feinmel as well as others on behalf of these

13   plaintiffs, from filing these, and so I don't think

14   that it's a secret that these actions don't hold

15   water, and we did our notice, and we got the 21

16   days, but as I said, we're really just looking for

17   an award of our reasonable fees in this case.

18        THE COURT:  Are you seeking entitlement or an

19   amount because I would really have to have a

20   separate hearing if ---

21        MR. GIBSON:  They were just seeking

22   entitlement, and I would ask that it be awarded

23   against the plaintiff as well as Mr. Feinmel

24   because the plaintiff is a land trust, Your Honor,

25   and they can probably just file a document with the

Page 6

1    State, and they'll be uncollectible, and so that's

2    our position.

3           THE COURT:  Thank you.

4           What is your response, please?

5           MR. LISS:  Your Honor, we kind of do take this

6    as a matter of being here for blood.  The way this

7    went down is that the safe harbor provision, the

8    21-day provision, seems to have been

9    administratively blown by a secretary.

10          THE COURT:  Excuse me one second, the jury is

11   coming in.

12          (Brief interruption.)

13          THE COURT:  Can you walk me through the 21-day

14   provision?

15          MR. LISS:  Do you mean as to how they did it?

16          THE COURT:  Yes.

17          MR. LISS:  I would say that it was probably a

18   secretary not getting the signature line in front

19   of counsel and sending it out in time, but the 21

20   days plus ---

21          THE COURT:  How did you calculate the 21 days?

22          MR. LISS:  Well, the 21 days from service of

23   the nonfiled motion, because counsel did follow the

24   procedure of sending a motion without filing the

25          ---

Page 7

1      THE COURT:  Yes, but what is the ---

2      MR. LISS:  This is just a service copy.  The

3   21 days expired, and then you get 5 additional days

4   for mail service under 1.090(e), which would have

5   brought the date, if I did my calculations right, I

6   believe, to November 19th, and the notice of

7   dismissal with prejudice was granted, and I filed

8   it on November 20th.  It's like a one-day penalty.

9   There are more costs incurred in coming here today

10   than the whole suit involved.

11      THE COURT:  Well, first of all, I take these

12   cases very seriously.  These are not slight

13   frivolous actions.  We're talking about clouding

14   title to real property in Florida, and so these

15   cases never should have been filed, and they never

16   should be filed in the future, and so I'm directing

17   you to make sure that these -- These are false and

18   frivolous cases.

19      People try to file these cases to get credit,

20   get through the court system and essentially get

21   free houses.  That's what they were trying to do,

22   which is wrong, improper and it's fraudulent, and

23   so I have a serious, serious problem with people

24   committing fraud on the Court, and that's exactly

25   what happened here.

Page 8

1      .   This is not a small thing to commit a fraud on

2    the Court.  We have got to take that very

3    seriously, and so if they fail to comply with the

4    requirements, if they violated 57.105, why should I

5    not enter 57.105 fees?

6         MR. LISS:  Well, I believe it would have to

7    make some findings, Your Honor, on the validity of

8    the land trust statute.

9         THE COURT:  I'm happy to make findings on it.

10        MR. LISS:  Well, I can just show you, just as

11   a for instance, that this came in the mail from

12   another law firm advertising ---

13        THE COURT:  That's what these companies are

14   advertising.  They're advertising that we can get

15   you a free house by essentially committing fraud on

16   the Court, is what these companies are advertising.

17   They're taking advantage of unsuspecting homeowners

18   in Florida who are in a dire financial situation.

19   This is a problem.

20        MR. LISS:  Well, the problem with these

21   clients is that the attorney general brought an

22   action that enjoined them from being able to

23   prosecute their case.

24        THE COURT:  Good.  I'm glad that the attorney

25   general did that.

Page 9

1      MR. LISS:  And so Mr. Feinmel's client had to

2    dismiss the case without getting to an adjudication

3    on the merits, and so I'm not agreeing or

4    disagreeing with Your Honor, but I'm strictly

5    saying that in the context of 57.105, this client

6    did, through counsel, dismiss with prejudice,

7    pursuant to the request of the plaintiff, and no

8    additional cost was incurred after the filing of

9    the 57.105 motion.

10     THE COURT:  Well, we'll have a separate

11   hearing as to the amount of the attorneys' fees as

12   to when that time period stopped and when counsel

13   no longer seeks attorneys' fees at this point in

14   time, but certainly, I think there is, beyond a

15   doubt, that these actions were false, and they were

16   frivolous, and you're trying to take advantage of

17   unsuspecting homeowners in Florida, and I don't

18   know how many of these actions have been filed, but

19   I know that there have been dozens and dozens filed

20   in Palm Beach County alone, and I know that they

21   have been filed in Broward, and I know that they

22   were filed in Miami-Dade, and they're simply not

23   acceptable.

24     MR. LISS:  If that is Your Honor's concern, I

25   can tell you that the attorney general is

Page 10

1    addressing your concerns through litigation, having

2    already sought it and received injunctive relief,

3    and now it's working its way through the merits

4    against a number of companies, so those have not

5    been adjudicated to be frivolous or anything else

6    at this point.

7         Now there is a land trust statute, and I

8    believe that the question comes down to whether the

9    advertising forum and the representations made to

10   consumers were deceptive.

11        THE COURT:  That's FDUPTA.  That's a FDUPTA

12   claim.  That's a different action.  The basis for

13   57.105 would be the action that your client filed,

14   as a plaintiff in my court, which was false and

15   fraud and has no basis in law.  That's the

16   determination that I can make on 57.105.

17        I'm glad that the attorney general is pursuing

18   injunction action and has stopped this from going

19   forward to harm unsuspecting consumers, but this is

20   not acceptable. ·

21        Counsel, at this time, do you have any

22   rebuttal on 57.105?

23        MR. GIBSON:  Your Honor, just that the

24   deadline is the deadline, and they blew it, and

25   they said that they did.  It was e-served, and so

Page 11

1    whether or not they're entitled to the five days

2    mailing, I believe that they have not interpreted

3    it to be so, but they still missed the deadline.

4        I'll be happy to argue the validity of the

5    underlying claims regarding the 4823 statute, the

6    lis pendens. None of these claims in the original

7    complaint offer them the relief that they're

8    looking for, and there's case law directly on point

9    as to that, and we cited JP Morgan vs. New

10   Millennium which says that this is not acceptable,

11   and this is not what it was designed to do.

12       They had full notice that these mortgages were

13   encumbering the property, and an assignment of

14   mortgage really doesn't matter in this case, and

15   that's exactly what they're using as the assignment

16   of mortgage to try to wipe these hundreds of

17   thousands of dollars worth of encumbrances out on

18   the property.

19       THE COURT: Yes, and we're talking about

20   hundreds and hundreds of thousands of dollars on

21   dozens, if not hundreds of thousands throughout the

22   State of Florida. We're talking about millions and

23   millions of dollars of fraud, is what we're talking

24   about. Isn't that what this is about?

25       MR. LISS: I cannot provide to you the exact

Page 12

1   case citations because I didn't expect to have to

2   provide them to Your Honor, but I can tell you that

3   Judge Gates, who had issued the injunction, had

4   already adjudicated on the merits in prior cases,

5   which was the Army of the attorney general getting

6   the restraining order from Judge Gates, but there

7   have been cases on the merits that had actually ---

8       THE COURT:  But how many of these were brought

9   before the Court, and I've spent a lot of time

10  researching this because I've seen a number of

11  these cases in my division as people try to bring

12  them in at UMC, unsuspecting judges, not me, but

13  unsuspecting judges, including judges who are my

14  colleagues, sign a couple of these and granted

15  default judgments.

16      That's what happened because they tried to

17  slip them in through the UMC.  That's not

18  acceptable.  That's a fraud on the Court, and I'm

19  going to grant your 57.105 motion and we'll have a

20  separate hearing on the amount of attorneys' fees,

21  full entitlement.

22      This is not acceptable, and we have to send a

23  message.  We cannot allow fraud to be committed on

24  our courts and unsuspecting homeowners to be taken

25  advantage of in Florida.  That is simply not

Page 13

1    acceptable, Counsel.  Please also let Mr. Feinmel

2    know that he's going to get sanctioned personally

3    too, and so can you prepare the order and email it

4    to me?

5         MR. GIBSON:  Yes, Your Honor, I'll submit

6    that.

7         THE COURT:  Thank you.

8         (Thereupon, the hearing was concluded at 9:35

9    a.m.)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 14

1                          HEARING CERTIFICATE
2
3            I, JANET M. WILLITZ, Registered Professional
4    Reporter, Registered Merit Reporter, certify that I was
5    authorized to and did stenographically report the
6    foregoing proceedings and that this transcript, pages 1
7    through 14 is a true record of the proceedings before
8    the Court.
9            I further certify that I am not a relative,
10   employee, attorney or counsel for any of the parties nor
11   am I a relative or employee of any of the parties;
12   attorney or counsel connected with the action, nor am I
13   financially interested in the action.
14           DATED this 18th day of January, 2013.
15
16
17   _____
18                            JANET M. WILLITZ
                              Registered Professional Reporter
                              Registered Merit Reporter
19
20
21
22
23
24
25

Veritext Florida Reporting Co.
800-726-7007                                            305-376-8800

# EXHIBIT F

### UNITED STATES DISTRICT COURT
### MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

THE FIDELITY LAND TRUST
COMPANY, LLC,

               Plaintiff,

vs.                                        Case No. 6:12-cv-1367-Orl-37TBS

MORTGAGE ELECTRONIC
REGISTRATION SYSTEMS, INC.; and
HOMECOMINGS FINANCIAL
NETWORK, INC.,

               Defendants.

---

### ORDER

This cause is before the Court on Magistrate Judge Thomas B. Smith's Report and Recommendation dated December 4, 2012. (Doc. 12.) The Magistrate Judge recommends that this Court grant in part and deny in part Defendants' Motion for Attorney's Fees, Costs and Sanctions (Doc. 10.) Plaintiff filed a timely objection to the Magistrate Judge's Report and Recommendation. (Doc. 16.)

When a party objects to a magistrate judge's findings, the district court must "make a de novo determination of those portions of the report . . . to which objection is made." 28 U.S.C. § 636(b)(1). The district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." *Id.* The district court must consider the record and factual issues based on the record independent of the magistrate judge's report. *Ernest S. ex rel. Jeffrey S. v. State Bd. of Educ.*, 896 F.2d 507, 513 (11th Cir. 1990).

Like the Magistrate Judge, this Court concludes that Plaintiff initiated and

pursued this litigation in bad faith. The evidence of this is legion: a state judge has told Plaintiff that its legal theory is meritless; a federal judge has told Plaintiff its legal theory is frivolous; and the Florida Attorney General has obtained injunctive relief against Plaintiff to prevent it from asserting claims based on the legal theory advanced in this lawsuit. Yet even in its objection, Plaintiff clings to the notion that its claims have merit. They do not.

Plaintiff is aware that its claims have no merit. Its business model, however, does not rely on the ability to prevail on the merits. Rather, Plaintiff appears to be in the business of delaying lawful foreclosures. The courts are not to be used to delay, deny, or frustrate just claims, and they are not to be used as a cog in a litigant's business model. Litigants who pursue meritless claims should be sanctioned, if only to ensure that the burden of their contemptuous behavior is borne by themselves alone.

Accordingly, it is hereby **ORDERED and ADJUDGED**:

1. Plaintiff's Objections to the Magistrate Judge's Report and Recommendation (Doc. 16) are **OVERRULED**.

2. The Magistrate Judge's Report and Recommendation (Doc. 12) is **ADOPTED** as the opinion of the Court.

3. Defendants' Motion for Attorney's Fees, Costs, and Sanctions (Doc. 10) is **GRANTED IN PART** and **DENIED IN PART**. It is granted to the extent it seeks, pursuant to the Court's inherent power, sanctions against Plaintiff. The Motion is denied in all other respects.

4. The Court hereby finds that Plaintiff The Fidelity Land Trust Company, LLC instituted and prosecuted this action in bad faith. As a sanction, and in accordance with its inherent power, the Court awards Defendants their

reasonable attorney's fees and costs.

5.   Defendants shall apply for their award of attorney's fees and costs by separate motion on or before January 11, 2013, in accordance with Local Rule 4.18.

6.   Plaintiff's counsel, Howard Feinmel, is hereby placed on notice that the claims raised in this lawsuit are without merit. If Mr. Feinmel continues to commence lawsuits based on the legal theories advanced in this case or continues to prosecute any claims based on these meritless theories, the Court may, pursuant to Local Rule 2.04, refer the matter to the Grievance Committee of the U.S. District Court for the Middle District of Florida for an investigation and recommendation as to whether such conduct merits disciplinary action by the Court.

**DONE AND ORDERED** in Chambers in Orlando, Florida, on December 27, 2012.

ROY B. DALTON JR.
United States District Judge

Copies:
Counsel of Record

3

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

THE FIDELITY LAND TRUST COMPANY,
LLC,

      Plaintiff,

v.                                                    Case No.  6:12-cv-1367-ORL-37TBS

MORTGAGE ELECTRONIC
REGISTRATION SYSTEMS, INC., and
HOMECOMINGS FINANCIAL NETWORK,
INC.,

      Defendants.
                               /

## REPORT AND RECOMMENDATION

This case is before the Court on the Defendants' Motion for Attorneys' Fees, Costs and Sanctions.[1]  Plaintiff, The Fidelity Land Trust Company, LLC ("Fidelity") has not filed a response to the motion and the time for doing so has expired.  For the following reasons, I recommend that the Court grant the motion.

I.    Background

The background of this case begins with non-party, Edward Cherry who has engaged in willful, deceptive and unfair trade practices in violation of Chapter 501, Part II, Florida Statutes (2007).[2]  The Office of the Attorney General, Department of Legal Affairs, State of Florida (the "Attorney General") intervened in Case No. 08-007686 CACE 08 in the Circuit Court of the Seventeenth Judicial Circuit in and for

---

[1]Doc. 10.

[2]Doc. 10-2, Page 2.

Broward County, Florida to sue Cherry.[3]  That case culminated in a January 5, 2009

Consent Final Judgment Entering Injunctive Relief (the "Injunction"), in which

Cherry was permanently enjoined from:

> a. engaging in consumer-debt related services, whether secured or unsecured, including debt settlement services, debt management services, or any other service related to the consolidation, invalidation, reduction or dispute of consumer debts, either directly or indirectly, whether as the practice of law through a law office or law firm or as a business through any type of business or entity that is not a law office, law firm or engaged in the practice of law;
>
> b. representing and/or soliciting through advertisement and/or oral communication, either directly or indirectly, that they offer, provide or otherwise render consumer-debt related services, whether secured or unsecured, including debt settlement services, debt management services, or any other service related to the consolidation, invalidation, reduction or dispute of consumer debts, either directly or indirectly, whether as the practice of law through a law office or law firm or as a business through any type of business entity that is not a law office, law firm or engaged in the practice of law; and
>
> c. accepting, receiving or otherwise obtaining payment from consumers for consumer-debt related services, whether secured or unsecured, including debt settlement services, debt management services, or any other service related to the consolidation, invalidation, reduction or dispute of consumer debts, either directly or indirectly, whether as the practice of law through a law office or law firm or as a business through any type of business entity that is not a law office, law firm or engaged in the practice of law.[4]

On February 29, 2008, Chase Bank USA N.A. ("Chase") filed suit in the

United States District Court for the District of Delaware, Case No. 08-121-LPS-MPT

---

[3]Doc. 10-2, Page 2.

[4]Id.

against entities and persons related to Cherry.[5]  In an Order dated May 23, 2012, the District Judge adopted the Magistrate Judge's Report and Recommendation finding that at an unknown point in time Cherry began soliciting distressed consumers throughout the United States by representing himself as an expert in debt reduction and debt settlement.[6]  Consumers signed agreements with entities managed or controlled by Cherry and then began sending in monthly payments that were deposited into bank accounts controlled by Cherry.[7]  The funds were supposed to be used to pay the consumers' credit card debts and legal fees.[8]  Instead, Cherry disbursed more than $12 million to himself and others including his wife, former wife and brothers-in-law.[9]  Cherry also used more than $8 million to pay for illegal client solicitations.[10]  This resulted in Chase card members withholding payments on more than $75 million of outstanding debt owed to Chase.[11]

Fidelity is a Florida limited liability company.[12]  The Attorney General has alleged, in a lawsuit filed in the Circuit Court in and for Broward County, Florida, that Cherry, using the fictitious name "Edward C. Tudor," organized Fidelity and that

---

[5]Doc. 10-3, Page 2.

[6]Doc. 10-3, Pages 28-29.

[7]Id.

[8]Id.

[9]Id.

[10]Id.

[11]Id. at 30.

[12]Doc. 10-1, Page 2.

-3-

Cherry is a direct or indirect owner, manager, or person in control of Fidelity.[13]

According to the Attorney General, subsequent to January 1, 2011, Cherry and

others caused false statements and promises to be made to consumers to induce

them to transfer title to their homes to Fidelity for no consideration, pay Fidelity

advance fees for services it could not deliver, and sign promissory notes secured by

mortgages in favor of Fidelity.[14]  The Attorney General's complaint alleges that

Fidelity solicited homeowners with the following false representations and

promises:

> a. Guaranteeing that [Fidelity] would avoid the homeowner's "upside-down mortgage" through actions pursuant to Chapter 65, Florida Statutes, so that at the end of a 120 day process the homeowner will have equity in the home;

> b. Misrepresenting to homeowners that an assignment of mortgage is not good or effectual in law or equity against creditors or any subsequent purchasers unless the assignment of mortgage is recorded;

> c. Misrepresenting to homeowners that the homeowner's mortgage is not enforceable against [Fidelity] as a subsequent purchaser for a valuable consideration, notwithstanding the fact that [Fidelity] do[es] not pay any consideration to the homeowner for the deed transfer of title; and

> d. Misrepresenting to consumers that [Fidelity] (or [its] nominees) are bona fide transferees for value of the title of the mortgagors (the homeowners) so that the mortgagees' failure to record their assignments of mortgage under Chapter 701

---

[13]Doc. 10-4, Page 3.

[14]Id. at 7.

-4-

voids the homeowners' mortgages.[15]

On September 25, 2012, the state court found a substantial likelihood that the Attorney General will succeed on the merits of her allegations, and issued a temporary injunction against Cherry, Fidelity, and their co-defendants.[16]

Fidelity filed this case and a Notice of Lis Pendens in the Circuit Court of the Ninth Judicial Circuit in and for Orange County, Florida, Case No. 2012-CA-6727.[17] The lis pendens describes the property ("Property") located at 7962 Village Green Rd., Orlando, Florida 32818.[18] Its original Complaint sounded in three counts titled: "Declaratory Judgment Under F.S. § 695.01; Declaratory Judgment Under F.S. § 701.02; and Quiet Title."[19] Before any summonses were issued, Fidelity filed its First Amended Complaint in which it alleged that Rodney and Melanie Brown (the "Browns") previously owned the Property.[20] In or about January, 2006, the Browns mortgaged the Property to Defendant Homecomings Financial Network, Inc. ("Homecomings") to secure the repayment of a promissory note ("Note").[21] The Mortgage was recorded in the Public Records of Orange County, Florida and provides that Defendant Mortgage Electronic Registration Systems, Inc. ("MERS"),

---

[15]Id.

[16]See Attorney Gen. v. Cherry, et al., No. 12-26987 (Fla. 17th Cir. Ct. Sept. 25, 2012) (order granting temporary injunction) (6:12-cv-01676-Orl-19DAB, Doc. 1-1 at p.3).

[17]Doc. 4-2, Page 31.

[18]Doc. 4, ¶ 4.

[19]Doc. 1-2.

[20]Docs. 1-2 and 4, ¶ 4.

[21]Doc. 4, ¶ 7.

in its capacity as the nominee for Homecomings and Homecomings' successors and assigns, is the mortgagee.[22]

Fidelity alleged, on information and belief, that Homecomings sold the Note to an unknown party, thereby extinguishing Homecomings interest in the Mortgage.[23] The unknown owner of the Mortgage failed to record a valid assignment of mortgage in the Public Records.[24] The Browns subsequently quit claimed the Property to Fidelity as trustee in return for $10 and other considerations.[25] After it acquired title to the Property, Fidelity sent a letter to both Defendants, requesting an estoppel letter and a date, time and location where the original Note could be inspected and photocopied.[26] This request was ignored and the unknown owner of the Mortgage failed to intervene in the state court lawsuit within 30 days of the recording of the lis pendens.[27]

Fidelity alleged in Count I of this case that the Mortgage was unenforceable and had been extinguished pursuant to § 48.23(1)(d) Florida Statutes.[28] The statute provides in part that a recorded notice of lis pendens operates as a bar to the enforcement against the property, of unrecorded liens unless the holder

---

[22]Docs. 4, ¶ 7 and 4-2, Page 5.

[23]Doc. 4, ¶ 8.

[24]Doc. 4, ¶ 9.

[25]Doc. 4-2, Page 2.

[26]Doc. 4, ¶ 10.

[27]Doc. 4, ¶¶ 10 and 15.

[28]Doc. 4.

-6-

intervenes in the pending lawsuit within thirty days after the lis pendens is recorded.

In Count II, Fidelity requested a declaratory judgment that the Mortgage was not good or effectual against Fidelity pursuant to § 695.01 Florida Statutes.[29]  This statute provides in part that a mortgage of real property is not effective against a subsequent purchaser for value, without notice, unless the mortgage is recorded according to law.  The statute also provides that a grantee under a quit claim is deemed to be a bona fide purchaser without notice.

Count III sought a declaratory judgment that the Mortgage was not good or effectual against Fidelity pursuant to § 701.02 Florida Statutes.[30]  This statute provides, among other things, that the assignment of a mortgage is not effective against creditors or subsequent purchasers who pay value and take without notice, unless the assignment is contained in a recorded document which indicates in its title, that it contains an assignment of mortgage.

Count IV asked the Court to quiet title to the Property in Fidelity.[31]  As grounds, Fidelity alleged that it was entitled to have the Mortgage cancelled because the owner had failed to intervene in this lawsuit within thirty days after the lis pendens was recorded and that after diligent effort, Fidelity was unable to ascertain the identity of the owner of the Mortgage.

The Defendants filed a motion to dismiss Fidelity's First Amended Complaint

---

[29] Id.

[30] Id.

[31] Id.

in state court and then removed the case to this Court pursuant to 28 U.S.C. § 1332 and § 1441.[32] Fourteen days later, Fidelity filed its Notice of Voluntary Dismissal Pursuant to FRCP 41(a)(1)(A)(i).[33] Now, the Defendants believe the Court should sanction Fidelity pursuant to 28 U.S.C. § 1927, Federal Rule of Civil Procedure 11, Florida Statute §57.105, and the Court's inherent power to impose sanctions.[34]

## II.   Discussion

"[T]he Supreme Court [has] expressed strong support for the 'American Rule,' which prohibits the imposition of the prevailing party's attorneys' fees on an opponent except when authorized by statute or when a traditionally recognized exception is applicable."[35] "One such recognized exception is the so-called 'bad faith' exception. Under this exception, '[c]ourts have the 'inherent power' to assess attorney's fees as a fine . . . when a losing party has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'"[36] In determining the existence of bad faith, the Court focuses primarily on the conduct and motive of the party rather than the

---

[32]Docs. 1 and 1-2.

[33]Doc. 8.

[34]Doc. 10.

[35]Cox Enterprises, Inc. v. News-Journal Corp., NO. 6:04-cv-698-Orl-28KRS, 2012 WL 2921013 *3 (M.D.Fla. July 16, 2012) (quoting Woods v. Barnett Bank of Ft. Lauderdale, 765 F.2d 1004, 1014 (11th Cir. 1985) (citing Alyeska Pipeline Serv. Co. v. Wilderness Soc'y, 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975)).

[36]Cox Enterprises, Inc. v. News-Journal Corp., 2012 WL 2921013 *3 (M.D.Fla.) quoting Kreager v. Solomon & Flanagan, P.A., 775 F.2d 1541, 1543 (11th Cir. 1985) (quoting Alyeska Pipeline, 421 U.S. at 258-59.).

validity of its case.[37] "A finding of bad faith is warranted where an attorney knowingly or recklessly raises a frivolous argument, or argues a meritorious claim for the purpose of harassing an opponent. A party also demonstrates bad faith by delaying or disrupting the litigation or hampering enforcement of a court order."[38] "If particularly egregious, the pursuit of a claim without reasonable inquiry into the underlying facts can be the basis for a finding of bad faith."[39]

Defendants' claim that this lawsuit was frivolous is borne out by an examination of Fidelity's First Amended Complaint and applicable law. Section 48.23(1)(d) Florida Statutes applies to unrecorded interests in real property. Fidelity affirmatively alleged that the Mortgage was recorded in the Public Records and Fidelity did not claim that it had been satisfied. Thus, based upon its own allegations, Fidelity took title to the Property subject to the Mortgage and there was no merit to Count I of its First Amended Complaint. District Judge Whittemore reached the same conclusion in a similar case involving Fidelity: The Fidelity Land Trust Company, LLC as Trustee for Florida Land Trust No. 00160 dated January 20, 2012 v. Centex Home Equity Company, LLC. [40]

---

[37]Kreager v. Solomon & Flanagan, P.A., 775 F.2d 1541, 1543 (11th Cir. 1985); and Rothenberg v. Security Mgmt. Co., Inc., 736 F.2d 1470, 1472 (11th Cir. 1984).

[38]Barnes v. Dalton, 158 F.3d 1212, 1214 (11th Cir. 1998) (quoting Primus Automotive Fin. Servs., Inc., v. Batarse, 115 F.3d 644, 649 (9th Cir. 1977) (internal quotation and citation omitted).

[39]Barnes, 158 F.3d at 1214.

[40]The Fidelity Land Trust Company, LLC as Trustee for Florida Land Trust No. 00160 dated January 20, 2012 v. Centex Home Equity Company, LLC, ___ F.Supp.2d ___, Case 8:12-cv-2309-T-27TBM, 2012 WL 5383092 *1 (M.D.Fla. Nov. 1, 2012).

Fidelity's theory in Count II was equally without merit. Section 695.01 Florida Statutes provides that a mortgage of real property is not effective against a subsequent purchaser for value, without notice, unless the mortgage is recorded according to law. Fidelity alleged that the Mortgage was recorded in the Public Records and therefore, it had at least constructive notice. However, we know Fidelity had actual notice as evidenced by its request for an estoppel letter and an opportunity to inspect the original Note.

Count II was also frivolous because § 695.01 applies to conveyances of real property. The statute contemplates competing interests in real property, such as an unrecorded deed, and its effect on a subsequent purchaser for value. [41] The statute does not apply because the assignment of Mortgage (the document Fidelity complained was not recorded) was not a conveyance of real property, it simply reflected that the existing Mortgage was in new hands.[42] Moreover, the identity of the mortgagee of the Property never changed. The Mortgage, by its terms, declares that MERS is the mortgagee for Homecomings and its successors in interest. The failure to record the assignment had no effect on Fidelity as a subsequent purchaser.[43] Accordingly, Fidelity's claim that the Mortgage it was

---

[41] See Morris v. Osteen, 948 So.2d 821, 826-27 (Fla. 5th DCA 2007) (couching § 695.01 in terms of competing interests in land).

[42] United of Florida, Inc. v. Illini Fed. Sav. and Loan Ass'n., 341 So.2d 793, 794 (Fla. 2d DCA 1977).

[43] See In re Halabi, 184 F.3d at 1338 ("[A] subsequent assignment of the mortgagee's interest --- whether recorded or not --- does not change the nature of the interest of the mortgagor or someone claiming under him."

aware of became unenforceable because an assignment was not recorded misconstrued the plain language of the statute and was, as Judge Whittemore held in the Centex case, "frivolous."[44]

The Defendants filed the transcript of a January 5, 2012 hearing held in the Circuit Court of the Fifteenth Judicial Circuit in and for Palm Beach County, Florida, Case No. 50-2011-CA-016163 in support of their motion.[45] The plaintiff in that case was attempting to defeat a recorded mortgage based upon §§ 48.23 and 701.02 Florida Statutes, the same claims made in Counts I and III of Fidelity's First Amended Complaint in this case.[46] Cherry attended the hearing in his role as general partner in the managing partner of the plaintiff in the Palm Beach County case.[47] Also present, as counsel for the plaintiff, was attorney Howard Feinmel. (Id. at 3). Feinmel is counsel of record for Fidelity in the case currently before this Court and he has represented Fidelity in at least four other cases.[48] According to the transcript, Cherry, who is not a member of the Florida Bar, drafted the complaint in the Palm Beach case and Feinmel affixed his signature and Bar number to the

---

[44]Id.

[45]Doc. 10-6, Page 27.

[46]Doc. 10-6, Pages 18 and 23.

[47]Id. at 4.

[48]See, Case No. 8:12-cv-1930-EAK-MAP in the United States District Court, Middle District of Florida; Case No. 12-08512-02 in the Circuit Court of the Seventeenth Judicial Circuit in and for Broward County, Florida; Case No. 0:12-cv-61846-DMM in the United States District Court, Southern District of Florida; and Case No. 2012-CA-939 in the Circuit Court for Leon County, Florida.

complaint.[49]  At the hearing, the trial judge, who had performed his own research, gave counsel copies of <u>JP Morgan Chase v. New Millennial, LC</u>, 6 So. 3d 681, 685 (Fla. 2nd DCA 2009) and explained the holding.[50]  In <u>Millennial</u>, the court, citing <u>Kapila v. Atlantic Mortgage & Investment Corp. (In re Halabi)</u>, 184 F.3d 1335 (11th Cir. 1999), rejected the same argument based upon § 701.02 Florida Statutes that Fidelity made in this case.  By the time the state court hearing was over, both Cherry and Feinmel knew or should have known there was no merit to this claim which Feinmel subsequently included in Fidelity's Complaint and First Amended Complaint in this case.[51]

Count IV asked the Court to quiet title to the Property in Fidelity.  Because Fidelity had no grounds to bring its claims under §§ 48.23, 695.01 or 701.02 Florida Statutes, it did not have a lawful basis to quiet title to the Property.

There was no plausible basis in law for the filing of this action, which any competent, professional attorney would have known by reading the statutes and if that was not sufficient, reading the case law.  This is not a situation in which a lawsuit was filed in good faith and later discovery revealed that there was not a basis for it.  Fidelity's claims against Defendants were based upon legal theories that had absolutely no chance of success and which cannot be characterized as

---

[49]<u>Id.</u> at 9.

[50]Doc. 10-6, Pages 10-12 and 23-26.

[51]<u>Id.</u>; <u>New Millennial, LC</u>, 6 So.3d at 685-86 (Fla. 2d DCA 2009).

reasonable arguments to change existing law.  Based upon the findings in the Injunction, the findings made by the United States District Court for the District of Delaware, and the Attorney General's allegations against Cherry and Fidelity a reasonable inference can be drawn that the real motivation for filing this lawsuit was to further a plan or scheme to defraud the Browns and other consumers.

Fidelity was given an opportunity to defend against this motion and demonstrate that there was a reasonable basis in law and fact for bringing this lawsuit.  It chose not to.  The Court may conclude from Fidelity's failure to present any evidence or argument in opposition to Defendants' motion that it has no justification for filing this action.[52]

"Grounds for a bad faith award exist when a plaintiff brings a groundless suit and forces the defendant to expend time and effort conducting his defense."[53]  The exercise by the Court of its inherent powers to impose sanctions against Fidelity is warranted because it brought a totally meritless lawsuit that caused Defendants to spend time and money defending themselves.[54]  I recommend as a sanction that Fidelity be ordered to pay Defendant's reasonable attorneys' fees and costs to defend this action from the date they were served with original process through the conclusion of this proceeding.  I do not recommend the imposition of sanctions

---

[52]Id. at 1214-15.

[53]Gordon v. Heimann, 715 F.2d 531, 539 (11th Cir. 1983).

[54]In re Medical One, Inc., 68 B.R. 150 (M.D.Fla. 1986); Jones v. International Riding Helmets, Ltd., 49 F.3d 692 (11th Cir. 1995);  Glass v. Pfeffer, 849 F.2d 1261 (10th Cir. 1988); Ortiz v. D& W Foods, Inc., 657 F.Supp.2d 1328 (S.D. Fla. 2009); and Rothenberg v. Security Mgmt. Co., Inc., 736 F.2d 1470, 1472 (11th Cir. 1984).

against Feinmel because Defendants have not asked the Court to sanction him and he has not been given notice or an opportunity to defend himself. The Court may however, wish to issue a rule to show cause to Feinmel.

I do not recommend the imposition of sanctions against Fidelity pursuant to Federal Rule of Civil Procedure 11(c) or § 57.105 Florida Statutes. Both contain safe-harbor provisions requiring the moving party to serve the offending party with the motion at least 21 days before the motion is filed with the Court. The moving party cannot file the motion if, within those 21 days, the offending party withdraws or corrects the challenged conduct. Fed. R. Civ. P. 11(c)(2); Fla. Stat. § 57.105(4); see also In re Porto, 645 F.3d 1294, 1306 n.8 (11th Cir. 2011). There is no evidence in this record that Defendants complied with the safe harbor requirements by serving Fidelity with their motion before they filed it with the Court.

I also do not recommend that the Court impose sanctions under 28 U.S.C. § 1927. This section applies to conduct which multiples the proceedings.[55] The moving party must show that: (1) counsel engaged in "unreasonable and vexatious" conduct; (2) counsel's conduct multiplied the proceedings, and (3) the sought sanction must equal the excess fees caused by the objectionable conduct.[56] Case law holds that § 1927 does not apply to an initial complaint.[57] Because Defendants seek to impose sanctions based upon Plaintiff's initial filing of this action, § 1927

---

[55]Peer v. Lewis, 606 F.3d 1306, 1314 (11th Cir. 2010).

[56]Id.

[57]Macort v. Prem, Inc., 208 F. App'x 781, 786 (11th Cir. 2006)

-14-

does not apply.

III.     Recommendation

Now, I respectfully **RECOMMENDED** that this Court:

(1) Make a finding that Fidelity instituted and prosecuted this action in bad faith;

(2) Grant the Defendants' motion for sanctions;

(3) Exercise the Court's inherent power to sanction Fidelity; and as a sanction

(4) Award Defendants their reasonable attorneys' fees and costs of this action.

Specific written objections may be filed in accordance with 28 U.S.C. § 636, and Rule 6.02, Local Rules, M.D. Fla., within ten (10) days after service of this report and recommendation. Failure to file timely objections shall bar the party from a *de novo* determination by a district judge and from attacking factual findings on appeal

**IN CHAMBERS** in Orlando, Florida, on December 4, 2012.

THOMAS B. SMITH
United States Magistrate Judge

-15-

Copies to:

    United States District Judge
    Counsel of Record

-16-

# EXHIBIT G

**U.S. District Court**
**Middle District of Florida (Tampa)**
**CIVIL DOCKET FOR CASE #: 8:12-cv-01930-EAK-MAP**

| 12/12/2012 | 14 | ENDORSED ORDER granting the unopposed 12 Motion for attorney fees; granting 12 Motion for sanctions. The parties have 30 days to attempt to agree on the amount of fees and sanctions. If unable to do so, the defendants shall file an appropriately supported motion before this court. Signed by Judge Elizabeth A. Kovachevich on 12/12/2012. (SN) (Entered: 12/12/2012) |
|---|---|---|

# EXHIBIT H

IN THE CIRCUIT COURT OF THE FIFTH JUDICIAL CIRCUIT,
IN AND FOR MARION COUNTY, FLORIDA
CIVIL DIVISION

Case Number: *12 - 4941 - CAG*

ANTONY T. BARRIOS, INDIVIDUALLY;

      Plaintiff(s)

vs.

REGIONS BANK D/B/A REGIONS
MORTGAGE; ANY AND ALL
UNKNOWN PARTIES CLAIMING BY,
THROUGH UNDER AND AGAINST THE
HEREIN NAMED INDIVIDUAL
DEFENDANT(S) WHO ARE NOT
KNOWN TO BE DEAD OR ALIVE,
WHETHER SAID UNKNOWN PARTIES
MAY CLAIM AN INTEREST AS
SPOUSES; HEIRS, DEVISEES,
GRANTEES, OR OTHER CLAIMANTS;
et al

      Defendant(s)

_____/

## VERIFIED COMPLAINT TO QUIET TITLE

    ANTONY T. BARRIOS by and through his undersigned attorney brings his
Verified Complaint to Quiet Title, against the following named Defendant(s):

REGIONS BANK D/B/A REGIONS MORTGAGE; and

ANY AND ALL UNKNOWN PARTIES CLAIMING BY, THROUGH UNDER AND
AGAINST THE HEREIN NAMED INDIVIDUAL DEFENDANT(S) WHO ARE NOT
KNOWN TO BE DEAD OR ALIVE, WHETHER SAID UNKNOWN PARTIES MAY
CLAIM AN INTEREST AS SPOUSES; HEIRS, DEVISEES, GRANTEES, OR OTHER
CLAIMANTS and allege:

1

1.  This is an action under Fla. Stat. § 65.011-65.061 to quiet title to the real Property owned by ANTONY T. BARRIOS in fee simple and located at 2974 SW 140TH AVE., OCALA, FLORIDA 34481 and more fully described as follows:

    > LOT 6, BLOCK 26, RAINBOW PARK UNIT NO. 1 REVISED, AS PER PLAT THEREOF RECORDED IN PLAT BOOK G, PAGE 10, PUBLIC RECORDS OF MARION COUNTY, FLORIDA, LESS AND EXCEPT ANY PORTION THEREOF LYING WITHIN ROAD RIGHT OF WAY. ("Property")

2.  ANTONY T. BARRIOS'S title to the above-referenced Property is derived from the Corporate Warranty Deed from R & M Development of Ocala, LLC, a Florida Limited Liability Company to ANTONY T. BARRIOS, recorded at Official Records Instrument Number: 2007044876, Book 04751, Page(s) 1927, in the Public Records of MARION County, FLORIDA. A true and correct copy of said Corporate Warranty Deed is attached as Exhibit "A". This is evidence of the plaintiff's valid title in the Property as required under Florida Law. Brickell v. Trammell, 77 Fla. 568 (Fla.1919); Culbertson v. Montanbault, 133 So. 2d 772,774 (Fla. 2d DCA 1961); McLemore v. McLemore, 675 So. 2d 202,206 (Fla. 1st DCA 1996).

3.  ANTONY T. BARRIOS is in possession of the Property located at 2974 SW 140TH AVE., OCALA, FLORIDA 34481, MARION County, FLORIDA. Therefore venue is proper pursuant to Fla. Stat. § 47,011.

4.  On 3/27/2007, REGIONS BANK D/B/A REGIONS MORTGAGE recorded a document describing it as a lender in the public records of Marion County, at Official Records Instrument Number: 2007044877, Book 04751, Page(s) 1928-1944. Said document purported that REGIONS BANK D/B/A REGIONS MORTGAGE lent ANTONY T. BARRIOS $142,400.00 and that said amount is secured by the purported mortgage document. A true and correct copy is attached as Exhibit "B".

2

5.  ANTONY T. BARRIOS repeatedly demanded of REGIONS BANK D/B/A REGIONS MORTGAGE to prove that it had lent ANTONY T. BARRIOS any sum of money (see Exhibit "C").

6.  REGIONS BANK D/B/A REGIONS MORTGAGE failed to prove that it had lent ANTONY T. BARRIOS any sum of money. A true and corrected copy is attached as Exhibit "C".

7.  REGIONS BANK D/B/A REGIONS MORTGAGE does not have any valid or enforceable interest in Plaintiffs Property because REGIONS BANK D/B/A REGIONS MORTGAGE failed to prove that it lent any money to ANTONY T. BARRIOS. Therefore, Plaintiff has demonstrated with clearness, accuracy and certainty, the invalidity of REGIONS BANK D/B/A REGIONS MORTGAGES interest in Plaintiffs' Property as required under Florida Law. Brickell v. Trammell, 77 Fla. 568 (Fla.1919); Culbertson v. Montanbault, 133 So. 2d 772,774 (Fla. 2d DCA 1961); McLemore v. McLemore, 675 So. 2d 202,206 (Fla. 1st DCA 1996).

8.  Plaintiffs' demanded REGIONS BANK D/B/A REGIONS MORTGAGE remove, satisfy and release said purported mortgage.

9.  REGIONS BANK D/B/A REGIONS MORTGAGE failed to comply with Plaintiffs' demand that it remove, satisfy and release said purported mortgage.

10. The recorded purported mortgage represents a cloud on Plaintiffs' title to his Property.

11. All conditions precedent to the filing of this action has been met, waived or have occurred.

3

Wherefore, ANTONY T. BARRIOS requests this honorable court to enter its judgment against Regions Bank d/b/a Regions Mortgage declaring the Mortgage recorded at Official Records Instrument Number: 2007044877, Book 04751, Page(s) 1928-1944, Null and Void; canceling the Mortgage(s) of Record and the subsequent assignment; quieting title to the Property owned by ANTONY T. BARRIOS and against REGIONS BANK D/B/A REGIONS MORTGAGE and all person claiming under Defendant(s); and granting costs of this action and such other relief as the court deems just and proper.

4

<u>VERIFICATION</u>

I, ANTONY T. BARRIOS am the plaintiff(s) in the above-entitled action. I have read the foregoing completely and know the contents thereof. The same is true of my own knowledge, except as to those matters which are therein alleged on information and belief, and as to those matters, I believe it to be true.

I declare under penalty of perjury that the foregoing is true and correct and that this declaration was executed at _MARION COUNTY, FLORIDA_.

DATED: _13 NOVEMBER_   _2012_

ANTONY T. BARRIOS
P.O.Box 3451
Dunnellon, Florida 34430

Respectfully Submitted,

Kelley A. Bosecker
Attorney at Law
1400 Gandy Boulevard, #706
St. Petersburg, Florida 33702
813-334-1745
Fax: 727-258-8699
Florida Bar No. 0443931
Attorney for Plaintiff
sbosecker@tampabay.rr.com

5

IN THE CIRCUIT COURT OF THE FIFTH JUDICIAL CIRCUIT,
IN AND FOR MARION COUNTY, FLORIDA
CIVIL DIVISION

Case Number: 12-3722-CAB

TREVOR FITZGERALD, INDIVIDUALLY;
SONIA FITZGERALD, INDIVIDUALLY;
BEN W. FITZGERALD, INDIVIDUALLY;

        Plaintiff(s)

   vs.

REGIONS BANK D/B/A REGIONS
MORTGAGE; ANY AND ALL
UNKNOWN PARTIES CLAIMING BY,
THROUGH UNDER AND AGAINST THE
HEREIN NAMED INDIVIDUAL
DEFENDANT(S) WHO ARE NOT
KNOWN TO BE DEAD OR ALIVE,
WHETHER SAID UNKNOWN PARTIES
MAY CLAIM AN INTEREST AS
SPOUSES; HEIRS, DEVISEES,
GRANTEES, OR OTHER CLAIMANTS;
et al

        Defendant(s)

_____/

## AMENDED VERIFIED COMPLAINT TO QUIET TITLE

        COMES NOW, TREVOR FITZGERALD, SONIA FITZGERALD AND BEN
W. FITZGERALD, (hereinafter the "Plaintiffs") by and through their undersigned
attorney and brings their AMENDED Original Verified Complaint to Quiet Title, against
the following named Defendant(s):

REGIONS BANK D/B/A REGIONS MORTGAGE; and

1

ANY AND ALL UNKNOWN PARTIES CLAIMING BY, THROUGH UNDER AND AGAINST THE HEREIN NAMED INDIVIDUAL DEFENDANT(S) WHO ARE NOT KNOWN TO BE DEAD OR ALIVE, WHETHER SAID UNKNOWN PARTIES MAY CLAIM AN INTEREST AS SPOUSES; HEIRS, DEVISEES, GRANTEES, OR OTHER CLAIMANTS and allege:

1.    This is an action under Fla. Stat. § 65.011-65.061 to quiet title to the real Property owned by TREVOR FITZGERALD, SONIA FITZGERALD AND BEN W. FITZGERALD in fee simple and located at 10045 SE 42 CT, BELLEVIEW, FLORIDA 34420 and more fully described as follows:

> LOT 2, BLOCK A , COBBLESTONEPHASE 2,
> ACCORDING TO THE PLAT THEREOF RECORDED
> IN PLAT BOOK 7, PAGES 104 TO 106, INCLUSIVE, OF
> THE PUBLIC RECORDS OF MARION COUNTY,
> FLORIDA ("Property")

2.    TREVOR FITZGERALD, SONIA FITZGERALD AND BEN W. FITZGERALD'S title to the above-referenced Property is derived from the Warranty Deed from Lee C. Boysen and Gail Preset and Roger A. Preset to TREVOR FITZGERALD, SONIA FITZGERALD AND BEN W. FITZGERALD, recorded at Official Records Instrument Number: 2010058842, Book 5378, Page(s) 0641, in the Public Records of Marion County, Florida. A true and correct copy of said Warranty Deed is attached as Exhibit "A". This is evidence of the plaintiffs' valid title in the Property as required under Florida Law. Brickell v. Trammell, 77 Fla. 568 (Fla.1919); Culbertson v. Montanbault, 133 So. 2d 772,774 (Fla. 2d DCA 1961); McLemore v. McLemore, 675 So. 2d 202,206 (Fla. 1st DCA 1996).

3.    TREVOR FITZGERALD, SONIA FITZGERALD AND BEN W. FITZGERALD are in possession of the Property located at 10045 SE 42 CT, BELLEVIEW, FLORIDA 34420, Marion County, Florida. Therefore venue and jurisdiction are proper pursuant to Fla. Stat. § 47.011.

2

4.   On 6/29/2010, REGIONS BANK D/B/A REGIONS MORTGAGE recorded a document describing it as a lender in the public records of Marion County, at Official Records Instrument Number: 2010058843, Book 5378, Page(s) 642-654. Said document purported that REGIONS BANK D/B/A REGIONS MORTGAGE lent TREVOR FITZGERALD, SONIA FITZGERALD AND BEN W. FITZGERALD $143,073.00 and that said amount is secured by the purported mortgage document. A true and correct copy is attached as Exhibit "B".

5.   TREVOR FITZGERALD, SONIA FITZGERALD AND BEN W. FITZGERALD repeatedly demanded of REGIONS BANK D/B/A REGIONS MORTGAGE to prove that it had lent TREVOR FITZGERALD, SONIA FITZGERALD AND BEN W. FITZGERALD any sum of money. A true and correct copy is attached as Exhibit "C".

6.   REGIONS BANK D/B/A REGIONS MORTGAGE failed to prove that it had lent TREVOR FITZGERALD, SONIA FITZGERALD AND BEN W. FITZGERALD any sum of money.

7.   Because REGIONS BANK D/B/A REGIONS MORTGAGE failed to prove that it lent any money to TREVOR FITZGERALD, SONIA FITZGERALD AND BEN W. FITZGERALD, REGIONS BANK D/B/A REGIONS MORTGAGE does not have any valid or enforceable interest in Plaintiffs' Property. Therefore, Plaintiffs have demonstrated with clearness, accuracy and certainty, the invalidity of REGIONS BANK D/B/A REGIONS MORTGAGES interest in Plaintiffs' Property as required under Florida Law. Brickell v. Trammell, 77 Fla. 568 (Fla.1919); Culbertson v. Montanbault, 133 So. 2d 772,774 (Fla. 2d DCA 1961); McLemore v. McLemore, 675 So. 2d 202,206 (Fla. 1st DCA 1996).

8.   Plaintiffs demanded REGIONS BANK D/B/A REGIONS MORTGAGE remove, satisfy and release said purported mortgage. A true and correct copy is attached as Exhibit "C".

9.   REGIONS BANK D/B/A REGIONS MORTGAGE failed to comply with Plaintiffs' demand that it remove, satisfy and release said purported mortgage.

10.  The recorded purported mortgage represents a cloud on Plaintiffs' title to their Property.

11.  On 8/30/2012, REGIONS BANK DBA REGIONS MORTGAGE, recorded an Assignment of Mortgage in Marion County, at Official Records Instrument Number: 2012085208, Book 5728, Page(s) 556. A true and correct copy is attached as Exhibit "D".

12.  Because the purported mortgage did not vest any interest in REGIONS BANK D/B/A REGIONS MORTGAGE, the purported assignment from REGIONS BANK D/B/A REGIONS MORTGAGE to REGIONS BANK DBA REGIONS MORTGAGE did not transfer any interest in the Property to REGIONS BANK DBA REGIONS MORTGAGE. The purported mortgage and assignment are therefore invalid and unenforceable. Therefore, Plaintiffs have demonstrated with clearness, accuracy and certainty, the invalidity of REGIONS BANK DBA REGIONS MORTGAGES interest in Plaintiffs' Property as required under Florida Law. Brickell v. Trammell, 77 Fla. 568 (Fla.1919); Culbertson v. Montanbault, 133 So. 2d 772,774 (Fla. 2d DCA 1961); McLemore v. McLemore, 675 So. 2d 202,206 (Fla. 1st DCA 1996).

13.  The Plaintiffs repeatedly demanded REGIONS BANK DBA REGIONS MORTGAGE prove it had any valid interest in the Plaintiffs' Property. A true and correct copy is attached as Exhibit "E".

14.  REGIONS BANK DBA REGIONS MORTGAGE failed to prove it had any valid or enforceable interest in the Plaintiffs' Property.

4

15.   Trevor Fitzgerald, Sonia Fitzgerald and Ben W. Fitzgerald demanded REGIONS BANK DBA REGIONS MORTGAGE remove, satisfy and release said purported Assignment. A true and correct copy is attached as Exhibit "E".

16.   REGIONS BANK DBA REGIONS MORTGAGE failed to comply with Plaintiffs' demand that it remove, satisfy and release said purported mortgage.

17.   The recorded purported Assignment in favor of REGIONS BANK DBA REGIONS MORTGAGE represents a cloud on Trevor Fitzgerald, Sonia Fitzgerald and Ben W. Fitzgerald's title to their Property.

18.   All conditions precedents to the filing of this action have been met, waived or have occurred.

Wherefore, TREVOR FITZGERALD, SONIA FITZGERALD AND BEN W. FITZGERALD requests this honorable court to enter its judgment against Regions Bank d/b/a Regions Mortgage declaring the Mortgage recorded at Official Records Instrument Number: 2010058843, Book 5378, Page(s) 642-654 and the Assignment to Regions Bank DBA Regions Mortgage recorded at Official Records Instrument Number: 2012085208, Book 5728, Page(s) 556, Null and Void; canceling the Mortgage(s) of Record and the subsequent assignment; quieting title to the Property owned by TREVOR FITZGERALD, SONIA FITZGERALD AND BEN W. FITZGERALD and against REGIONS BANK D/B/A REGIONS MORTGAGE AND REGIONS BANK DBA REGIONS MORTGAGE and all persons claiming under Defendant(s); and granting costs of this action and such other relief as the court deems just and proper.

5

<u>VERIFICATION</u>

We, TREVOR FITZGERALD, SONIA FITZGERALD AND BEN W. FITZGERALD are the plaintiff(s) in the above-entitled action. We have read the foregoing completely and know the contents thereof. The same is true of my own knowledge, except as to those matters which are therein alleged on information and belief, and as to those matters, we believe it to be true.

We declare under penalty of perjury that the foregoing is true and correct and that this declaration was executed at _Marion County_, _Florida_.

DATED: _12/15/12_

TREVOR FITZGERALD
10045 SE 42 CT
Belleview, Florida 34420

SONIA FITZGERALD
10045 SE 42 CT
Belleview, Florida 34420

BEN W. FITZGERALD
10045 SE 42 CT
Belleview, Florida 34420

Respectfully Submitted,

Kelley A. Bosecker
Attorney at Law
1400 Gandy Boulevard, #706
St. Petersburg, Florida 33702
813-334-1745
Fax: 727-258-8699
Florida Bar No. 0443931
Attorney for Appellan
Attorney for Plaintiff
sbosecker@tampabay.rr.com

6

IN THE CIRCUIT COURT OF THE FIFTH JUDICIAL CIRCUIT,
IN AND FOR MARION COUNTY, FLORIDA
CIVIL DIVISION

Case Number: 12: 5012-CAB

JOSE R. GONZALEZ, INDIVIDUALLY;

    Plaintiff(s)

vs.

COMMUNITY BANK AND TRUST OF
FLORIDA; PRIME HOME MORTGAGE,
INC.; MERS; GMAC MORTGAGE; ANY
AND ALL UNKNOWN PARTIES
CLAIMING BY, THROUGH UNDER
AND AGAINST THE HEREIN NAMED
INDIVIDUAL DEFENDANT(S) WHO
ARE NOT KNOWN TO BE DEAD OR
ALIVE, WHETHER SAID UNKNOWN
PARTIES MAY CLAIM AN INTEREST
AS SPOUSES; HEIRS, DEVISEES,
GRANTEES, OR OTHER CLAIMANTS;
et al

    Defendant(s)

_____/

### VERIFIED COMPLAINT TO QUIET TITLE

    JOSE R. GONZALEZ (hereinafter the "Plaintiff") by and through his undersigned attorney brings his Verified Complaint to Quiet Title, against the following named Defendant(s):

COMMUNITY BANK AND TRUST OF FLORIDA; and

PRIME HOME MORTGAGE, INC.; and

MERS; and

1

2

GMAC MORTGAGE; and

ANY AND ALL UNKNOWN PARTIES CLAIMING BY, THROUGH UNDER AND AGAINST THE HEREIN NAMED INDIVIDUAL DEFENDANT(S) WHO ARE NOT KNOWN TO BE DEAD OR ALIVE, WHETHER SAID UNKNOWN PARTIES MAY CLAIM AN INTEREST AS SPOUSES; HEIRS, DEVISEES, GRANTEES, OR OTHER CLAIMANTS and allege:

1. This is an action under Fla. Stat. § 65.011-65.061 to quiet title to the real Property owned by the Plaintiff in fee simple and located at 8709 SW 56TH AVENUE ROAD, OCALA, FLORIDA 34476 and more fully described as follows:

> LOT 6, BLOCK 18, OF MAJESTIC OAKS FOURTH ADDITION, PHASE ONE, ACCORDING TO THE PLAT THEREOF, AS RECORDED IN PLAT BOOK 3, PAGES 77 THROUGH 80, INCLUSIVE, OF THE PUBLIC RECORDS OF MARION COUNTY, FLORIDA. ("Property")

2. The Plaintiff's title to the above-referenced Property is derived from the Warranty Deed from Triple Crown Homes, Inc; to JOSE R. GONZALEZ, recorded at Official Records Instrument Number: 2008019744, Book 04987, Page(s) 1613, in the Public Records of Marion County, Florida. A true and correct copy of said Warranty Deed is attached as Exhibit "A". This is evidence of the plaintiff's valid title in the Property as required under Florida Law. Brickell v. Trammell, 77 Fla. 568 (Fla.1919); Culbertson v. Montanbault, 133 So. 2d 772,774 (Fla. 2d DCA 1961); McLemore v. McLemore, 675 So. 2d 202,206 (Fla. 1st DCA 1996).

3. The Plaintiff is in possession of the Property located at 8709 SW 56TH AVENUE ROAD, OCALA, FLORIDA 34476, Marion County, Florida. Therefore venue and jurisdiction are proper pursuant to Fla. Stat. § 47.011.

4. On 2/26/2008, COMMUNITY BANK AND TRUST OF FLORIDA recorded a document describing it as a lender in the public records of Marion County, at Official Records Instrument Number: 2008019745, Book 4987, Page(s) 1614-1626.

Said document purported that COMMUNITY BANK AND TRUST OF FLORIDA lent the Plaintiff $252,000.00 and that said amount is secured by the purported mortgage document. A true and correct copy is attached as Exhibit "B".

5. The Plaintiff repeatedly demanded of COMMUNITY BANK AND TRUST OF FLORIDA to prove that it had lent the Plaintiff any sum of money. A true and correct copy is attached as Exhibit "C".

6. COMMUNITY BANK AND TRUST OF FLORIDA failed to prove that it had lent the Plaintiff any sum of money.

7. COMMUNITY BANK AND TRUST OF FLORIDA does not have any valid or enforceable interest in Plaintiff's Property, because COMMUNITY BANK AND TRUST OF FLORIDA failed to prove that it lent any money to the Plaintiff. Therefore, Plaintiff has demonstrated with clearness, accuracy and certainty, the invalidity of COMMUNITY BANK AND TRUST OF FLORIDAS interest in Plaintiff's Property as required under Florida Law. Brickell v. Trammell, 77 Fla. 568 (Fla.1919); Culbertson v. Montanbault, 133 So. 2d 772,774 (Fla. 2d DCA 1961); McLemore v. McLemore, 675 So. 2d 202,206 (Fla. 1st DCA 1996).

8. Plaintiff demanded COMMUNITY BANK AND TRUST OF FLORIDA remove, satisfy and release said purported mortgage. A true and correct copy is attached as Exhibit "C".

9. COMMUNITY BANK AND TRUST OF FLORIDA failed to comply with Plaintiff's demand that it remove, satisfy and release said purported mortgage.

10. The recorded purported mortgage represents a cloud on Plaintiff's title to his Property.

3

11. On 8/26/2008, PRIME HOME MORTGAGE, INC., recorded an Assignment of Mortgage in Marion County, at Official Records Instrument Number: 2008086374, Book 05087, Page(s) 0887. A true and correct copy is attached as Exhibit "D".

12. The purported mortgage and assignment are invalid and unenforceable, because the purported mortgage did not vest any interest in COMMUNITY BANK AND TRUST OF FLORIDA, the purported assignment from COMMUNITY BANK AND TRUST OF FLORIDA to PRIME HOME MORTGAGE, INC. did not transfer any interest in the Property to PRIME HOME MORTGAGE, INC.. Therefore, Plaintiff has demonstrated with clearness, accuracy and certainty, the invalidity of PRIME HOME MORTGAGE, INC.S interest in Plaintiff's Property as required under Florida Law. Brickell v. Trammell, 77 Fla. 568 (Fla.1919); Culbertson v. Montanbault, 133 So. 2d 772,774 (Fla. 2d DCA 1961); McLemore v. McLemore, 675 So. 2d 202,206 (Fla. 1st DCA 1996).

13. The Plaintiff repeatedly demanded PRIME HOME MORTGAGE, INC. prove it had any valid interest in the Plaintiff's Property. A true and correct copy is attached as Exhibit "E".

14. PRIME HOME MORTGAGE, INC. failed to prove it had any valid or enforceable interest in the Plaintiff's Property.

15. Jose R. Gonzalez demanded PRIME HOME MORTGAGE, INC. remove, satisfy and release said purported Assignment. A true and correct copy is attached as Exhibit "E".

16. PRIME HOME MORTGAGE, INC. failed to comply with Plaintiff's demand that it remove, satisfy and release said purported mortgage.

17. The recorded purported Assignment in favor of PRIME HOME MORTGAGE, INC. represents a cloud on the Plaintiff's title to his Property.

4

18. On 9/10/2008, MERS, recorded an Assignment of Mortgage in Marion County, at Official Records Instrument Number: 2008091152, Book 05093, Page(s) 1376. A true and correct copy is attached as Exhibit "F".

19. The purported mortgage and assignment are invalid and unenforceable, because the purported mortgage did not vest any interest in PRIME HOME MORTGAGE, INC., the purported assignment from PRIME HOME MORTGAGE, INC. to MERS did not transfer any interest in the Property to MERS. Therefore, Plaintiff has demonstrated with clearness, accuracy and certainty, the invalidity of MERSS interest in Plaintiff's Property as required under Florida Law. Brickell v. Trammell, 77 Fla. 568 (Fla.1919); Culbertson v. Montanbault, 133 So. 2d 772,774 (Fla. 2d DCA 1961); McLemore v. McLemore, 675 So. 2d 202,206 (Fla. 1st DCA 1996).

20. The Plaintiff repeatedly demanded MERS prove it had any valid interest in the Plaintiff's Property. A true and correct copy is attached as Exhibit "G".

21. MERS failed to prove it had any valid or enforceable interest in the Plaintiff's Property.

22. Plaintiff demanded MERS remove, satisfy and release said purported Assignment. A true and correct copy is attached as Exhibit "G".

23. MERS failed to comply with Plaintiff's demand that it remove, satisfy and release said purported mortgage.

24. The recorded purported Assignment in favor of MERS represents a cloud on the Plaintiff's title to his Property.

25. On 2/27/2012, GMAC MORTGAGE, recorded an Assignment of Mortgage in Marion County, at Official Records Instrument Number: 2012019259, Book 05637, Page(s) 1087. A true and correct copy is attached as Exhibit "H".

26. The purported mortgage and assignment are invalid and unenforceable, because the purported mortgage did not vest any interest in MERS, the purported assignment

5

from MERS to GMAC MORTGAGE did not transfer any interest in the Property to GMAC MORTGAGE. Therefore, Plaintiff has demonstrated with clearness, accuracy and certainty, the invalidity of GMAC MORTGAGES interest in Plaintiff's Property as required under Florida Law. Brickell v. Trammell, 77 Fla. 568 (Fla.1919); Culbertson v. Montanbault, 133 So. 2d 772,774 (Fla. 2d DCA 1961); McLemore v. McLemore, 675 So. 2d 202,206 (Fla. 1st DCA 1996).

27.  The Plaintiff repeatedly demanded GMAC MORTGAGE prove it had any valid interest in the Plaintiff's Property. A true and correct copy is attached as Exhibit "I".

28.  GMAC MORTGAGE failed to prove it had any valid or enforceable interest in the Plaintiff's Property.

29.  Plaintiff demanded GMAC MORTGAGE remove, satisfy and release said purported Assignment. A true and correct copy is attached as Exhibit "I".

30.  GMAC MORTGAGE failed to comply with Plaintiff's demand that it remove, satisfy and release said purported mortgage.

31.  The recorded purported Assignment in favor of GMAC MORTGAGE represents a cloud on the Plaintiff's title to his Property.

32.  All conditions precedents to the filing of this action have been met, waived or have occurred.

Wherefore, JOSE R. GONZALEZ requests this honorable court to enter its judgment against Community Bank and Trust of Florida declaring the Mortgage recorded at Official Records Instrument Number: 2008019745, Book 4987, Page(s) 1614-1626 and the Assignment to Prime Home Mortgage, Inc. recorded at Official Records Instrument Number: 2008086374, Book 05087, Page(s) 0887 and the Assignment to MERS recorded at Official Records Instrument Number: 2008091152, Book 05093, Page(s) 1376 and the Assignment to GMAC Mortgage recorded at Official Records Instrument Number:

6

VERIFICATION

I, JOSE R. GONZALEZ am the plaintiff(s) in the above-entitled action. I have read the
foregoing completely and know the contents thereof. The same is true of my own
knowledge, except as to those matters which are therein alleged on information and
belief, and as to those matters, I believe it to be true.

I declare under penalty of perjury that the foregoing is true and correct and that this
declaration was executed at *Summerfield , Florida* .

DATED: *12-10-2012* , _____

_____

JOSE R. GONZALEZ
8700 SW 56th Avenue Road
Ocala, Florida 34476

Respectfully Submitted,

Kelley A. Bosecker
Attorney at Law
1400 Gandy Boulevard, #706
St. Petersburg, Florida 33702
813-334-1745
Fax: 727-258-8699
Florida Bar No. 0443931
Attorney for Plaintiff
sbosecker@tampabay.rr.com

8